# IN THE SUPREME COURT OF CALIFORNIA

In re RICARDO P., a Person Coming Under the Juvenile Court Law.

---

THE PEOPLE,
Plaintiff and Respondent,
v.
RICARDO P.,
Defendant and Appellant.

S230923

First Appellate District, Division One
A144149

Alameda County Superior Court
SJ14023676

---

August 15, 2019

Justice Liu authored the opinion of the Court, in which Justices Cuéllar, Kruger, and Groban concurred.

Chief Justice Cantil-Sakauye filed a concurring and dissenting opinion, in which Justices Chin and Corrigan concurred.

---

In re RICARDO P.

S230923

Opinion of the Court by Liu, J.

In *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), we held that "a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Id.* at p. 486.) In this case, juvenile defendant Ricardo P. was placed on probation after admitting two counts of felony burglary. As a condition of his probation, the juvenile court required Ricardo to submit to warrantless searches of his electronic devices, including any electronic accounts that could be accessed through these devices. Although there was no indication Ricardo used an electronic device in connection with the burglaries, the court imposed the condition in order to monitor his compliance with separate conditions prohibiting him from using or possessing illegal drugs.

Ricardo challenged the electronics search condition as invalid under *Lent* and unconstitutionally overbroad. Although the Court of Appeal agreed that the condition was unconstitutionally overbroad and should be narrowed for that reason, it held the condition was permissible under *Lent* because it "is reasonably related to enhancing the effective supervision of a probationer" and thus serves to prevent future criminality. In so holding, the court recognized that its decision conflicted with other decisions holding identical search conditions under similar circumstances invalid under *Lent*.

We granted review to decide whether an electronics search condition like the one at issue here is " 'reasonably related to future criminality.' " (*Lent*, *supra*, 15 Cal.3d at p. 486.) We hold that the record here, which contains no indication that Ricardo had used or will use electronic devices in connection with drugs or any illegal activity, is insufficient to justify the substantial burdens imposed by this electronics search condition. The probation condition is not reasonably related to future criminality and is therefore invalid under *Lent*.

## I.

In September 2014, the Santa Clara County District Attorney filed a petition under Welfare and Institutions Code section 602 seeking to declare Ricardo a ward of the court. The petition alleged that Ricardo, along with his two adult cousins, committed two felony burglaries in San Jose earlier that year. According to the petition, Ricardo and his cousins were seen entering a house; when a resident entered through the front door, they fled through the back door without taking anything. A few hours later, they entered a different house in San Jose, broke a glass door, and stole costume jewelry worth about $200.

Ricardo admitted the allegations in the petition, and the case was transferred to the Alameda County juvenile court. In December 2014, Ricardo was declared a ward of the court and placed on probation. The juvenile court imposed various probation conditions, including drug testing, prohibitions on using illegal drugs and alcohol, and prohibitions on associating with people whom Ricardo knew to use or possess illegal drugs. Ricardo objected to the drug-related conditions, noting that "there's no indication there were any drugs associated with this crime." Dismissing the objection, the court cited the probation

report, which stated that Ricardo had told a probation officer that "he wasn't thinking" when he committed the offense and that "he stopped smoking marijuana after his arrest because he felt that [it] did not allow him to think clearly."

One of the probation conditions requires Ricardo to "[s]ubmit . . . electronics including passwords under [his] control to search by Probation Officer or peace office[r] with or without a search warrant at any time of day or night." Ricardo challenged this condition, arguing that it "is not reasonably related to the crime or preventing future crime." The court said: "I think the law is very clear that [such a condition] is appropriate . . . particularly [for] minors or people that are [Ricardo's] age. I find that minors typically will brag about their marijuana usage or drug usage, particularly their marijuana usage, by posting on the Internet, showing pictures of themselves with paraphernalia, or smoking marijuana. It's a very important part of being able to monitor drug usage and particularly marijuana usage." Based on Ricardo's statements that "he wasn't thinking" when he committed the offense and that smoking marijuana "did not allow him to think clearly," the court found that Ricardo "himself has made reference to the fact that marijuana was involved in the commission of this offense."

Ricardo appealed from the juvenile court's order imposing probation, arguing among other things that the electronics search condition is unreasonable under *Lent* and unconstitutionally overbroad. The Court of Appeal rejected Ricardo's argument that the condition runs afoul of *Lent*. The court "agree[d] with Ricardo that there is nothing in the record permitting an inference that electronics played a role in his crimes." But the court reasoned that the electronics search condition "is reasonably related to enabling the effective

supervision of Ricardo's compliance with his other probation conditions," namely, the various drug-related conditions. While the court apparently "share[d] some of Ricardo's skepticism about the prevalence of minors' boasting on the Internet about marijuana use," it declined to reject the juvenile court's findings as "speculative." The court acknowledged that its decision conflicted with a recent decision by a different division of the same Court of Appeal, *In re Erica R.* (2015) 240 Cal.App.4th 907, which held that an essentially identical electronics search condition was not "reasonably related to future criminal activity" and thus invalid under *Lent*. (*Erica R.*, at p. 913.)

At the same time, the Court of Appeal held that the electronics search condition is overbroad since it "does not limit the types of data on or accessible through his cell phone that may be searched" in light of the "juvenile court's stated purpose . . . to permit monitoring of Ricardo's involvement with illegal drugs." Because the condition is "insufficiently tailored to its purpose of rehabilitating Ricardo in particular," the court struck the condition and remanded for the juvenile court to impose "a narrower condition if it wishes." The court suggested that a probation condition that "limit[ed] searches of Ricardo's cell phone and other devices to electronic information that is reasonably likely to reveal whether Ricardo is boasting about his drug use or activity, such as text and voicemail messages, photographs, e-mails, and social media accounts," would be constitutional.

We granted review, limited to the question whether the electronics search condition imposed by the juvenile court satisfies *Lent*.

## II.

"The purposes of juvenile wardship proceedings are twofold: to treat and rehabilitate the delinquent minor, and to protect the public from criminal conduct." (*In re Jose C.* (2009) 45 Cal.4th 534, 555.) To those ends, a juvenile court may order a ward under its jurisdiction to probation. (Welf. & Inst. Code, §§ 727, 730, subd. (a).) Under Welfare and Institutions Code section 730, subdivision (b), the court "may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." "The juvenile court has wide discretion to select appropriate conditions," but "[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 889, 890 (*Sheena K.*).) "A condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court." (*In re Todd L.* (1980) 113 Cal.App.3d 14, 19.) On appeal, we " 'review conditions of probation for abuse of discretion.' " (*People v. Moran* (2016) 1 Cal.5th 398, 403 (*Moran*).) Specifically, we review a probation condition "for an indication that the condition is 'arbitrary or capricious' or otherwise exceeds the bounds of reason under the circumstances." (*People v. Olguin* (2008) 45 Cal.4th 375, 384 (*Olguin*).)

In *Lent*, we held that "a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Lent*, *supra*,

15 Cal.3d at p. 486.) We adopted the following three-part test from *People v. Dominguez* (1967) 256 Cal.App.2d 623: "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent*, at p. 486, quoting *Dominguez*, at p. 627.) The *Lent* test "is conjunctive — all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*Olguin*, *supra*, 45 Cal.4th at p. 379.)

Although *Lent* involved an adult probationer, the Courts of Appeal have "consistently held that juvenile probation conditions must be judged by the same three-part standard applied to adult probation conditions under *Lent*." (*In re D.G.* (2010) 187 Cal.App.4th 47, 52; see, e.g., *In re P.O.* (2016) 246 Cal.App.4th 288, 294; *In re Josh W.* (1997) 55 Cal.App.4th 1, 5–6; *In re Babak S.* (1993) 18 Cal.App.4th 1077, 1084.) We agree that the *Lent* test governs in juvenile and adult probation cases alike.

The Court of Appeal concluded that the first two prongs of the *Lent* test are satisfied here: First, the electronics search condition " 'has no relationship' " to the crime for which Ricardo was convicted (*Lent, supra*, 15 Cal.3d at p. 486); there is no indication that any electronic device was involved in the commission of the burglaries. Second, the electronics search condition clearly " 'relates to conduct which is not in itself criminal.' " (*Ibid.*)

The issue on which we granted review presupposes that the first and second *Lent* requirements are satisfied. This case turns on whether the electronics search condition satisfies

*Lent*'s third prong — that is, whether it " 'requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent, supra,* 15 Cal.3d at p. 486.) The Court of Appeal determined that the electronics search condition is "reasonably related to enabling the effective supervision of Ricardo's compliance with his other probation conditions." We hold that the condition does not satisfy *Lent*'s third prong because, on the record before us, the burden it imposes on Ricardo's privacy is substantially disproportionate to the countervailing interests of furthering his rehabilitation and protecting society.

As noted, the juvenile court imposed the electronics search condition solely to enable probation officers to monitor whether Ricardo is communicating about drugs or with people associated with drugs. The court imposed this condition even though, as the Court of Appeal explained, "there is no legitimate basis for inferring that electronic devices were connected to the commission of the burglaries." Moreover, there is no suggestion in the record or by the Attorney General that Ricardo has ever used electronic devices to commit, plan, discuss, or even consider unlawful use or possession of drugs or any other criminal activity. The juvenile court instead imposed drug-related conditions because of statements by Ricardo in the probation report that "he wasn't thinking" when he committed the offense and that "he stopped smoking marijuana after his arrest because he felt that [it] did not allow him to think clearly." The court then added the electronics search condition based on its observation that teenagers "typically" brag about such drug use on social media.

Like the Court of Appeal, we "share some of Ricardo's skepticism" about the juvenile court's inference that he was using drugs at the time he committed the burglaries, as well as

the juvenile court's generalization about teenagers' tendency to brag about drug use online. But even accepting these premises, we conclude that the electronics search condition here does not satisfy *Lent*'s third prong because the burden it imposes on Ricardo's privacy is substantially disproportionate to the condition's goal of monitoring and deterring drug use.

Our cases upholding probation conditions under *Lent*'s third prong have involved stronger connections between the burdens imposed by the challenged condition and a probationer's criminal conduct or personal history. In *Lent* itself, "there [was] no question as to the relationship of the total sum of restitution ordered to the crime of which defendant was convicted." (*Lent, supra,* 15 Cal.3d at p. 486.) The probation condition at issue in *Lent* required the defendant to pay restitution related to a charge of grand theft of which the defendant was acquitted. (*Id.* at p. 485.) In upholding the condition, we noted that restitution "has generally been deemed a deterrent to future criminality" and that a court "is not limited to the transactions or amounts of which defendant is actually convicted." (*Id.* at p. 486.) The defendant in *Lent* had been charged with two counts of grand theft and was convicted of one of them (*id.* at p. 485), and we held that the restitution condition was directly related to the defendant's crime of conviction and criminal history.

In *People v. Carbajal* (1995) 10 Cal.4th 1114, we again considered whether a trial court may order restitution as a condition of probation, this time in the context of an adult defendant convicted of a " 'hit-and-run.' " (*Id.* at p. 1118.) We held that the restitution condition was "related to the crime of leaving the scene of the accident" and "also related to the goal of deterring future criminality." (*Id.* at p. 1124.) On the second

point, we explained that the condition "force[s] the defendant to accept the responsibility he attempted to evade by leaving the scene of the accident without identifying himself," thus "act[ing] both as a deterrent to future attempts to evade his legal and financial duties as a motorist and as a rehabilitative measure tailored to correct the behavior leading to his conviction." (*Ibid.*) In upholding the condition, we noted that restitution could "serve a salutary rehabilitative purpose by directing the defendant to accept the social responsibility he attempted to evade when he fled the scene." (*Id.* at p. 1125.)

Our pre-*Lent* cases similarly required a closer relationship between the probation condition on one hand and the probationer's criminal conduct and deterring future criminality on the other. In *People v. Mason* (1971) 5 Cal.3d 759 (*Mason*), we determined that the validity of a condition requiring a "prior narcotics offender" to submit to warrantless property searches "seems beyond dispute . . . since that condition is reasonably related to the probationer's prior criminal conduct and is aimed at deterring or discovering subsequent criminal offenses." (*Id.* at p. 764.) We relied on case law holding that "such a condition is reasonable and valid" because it is " 'related to [the probationer's] reformation and rehabilitation *in the light of the offense of which he was convicted.*' " (*Ibid.*, italics added; cf. Cal. Rules of Court, rule 4.414(a)(1) & (b)(1) ["Criteria affecting the decision whether to grant or deny probation" include the defendant's "[p]rior record of criminal conduct, whether as an adult or a juvenile"].)

By contrast, in *In re Bushman* (1970) 1 Cal.3d 767, we invalidated a probation condition requiring the defendant "to seek psychiatric treatment at his own expense with a qualified psychiatrist approved by the court, and to continue the

treatment as required by the doctor and approved by the probation department and the court." (*Id.* at p. 776.) The defendant had been convicted of disturbing the peace, and there was no evidence that he needed psychiatric care and no suggestion that psychiatric care had any relationship to the crime of which he was convicted. (*Id.* at p. 777.) "Furthermore," we explained, "without any showing that mental instability contributed to that offense, psychiatric care cannot reasonably be related to future criminality." (*Ibid.*)

The Courts of Appeal have similarly recognized that *Lent*'s third prong requires more than just an abstract or hypothetical relationship between the probation condition and preventing future criminality. In *People v. Brandão* (2012) 210 Cal.App.4th 568 (*Brandão*), the defendant, who had been convicted of possessing methamphetamine, challenged a "no-gang-contact" probation condition. (*Id.* at p. 570.) "Nothing in the record," the *Brandão* court noted, "indicates that defendant has any gang affiliations or other gang-related history, nor did the underlying offense have anything to do with a gang." (*Ibid.*) The court concluded that the no-gang-contact probation condition was not "*reasonably* related to a risk that defendant will reoffend." (*Id.* at p. 574.) The court rejected the Attorney General's argument that the probation condition should be upheld because of the "possible beneficent effect" (*id.* at p. 577) that it would prevent the defendant from associating with gang members and thereby " 'slide down the recidivist ladder' " (*id.* at p. 576; see *id.* at pp. 576–577). "To be sure," the court acknowledged, "making contact with members of criminal street gangs could be deleterious to defendant," but *Lent* does not "authoriz[e] conditions to shield probationers from exposure to people and circumstances that are less than ideal but are nonetheless

unrelated to defendant's current or prior offenses or any factor suggesting a risk of future criminal conduct." (*Id.* at p. 577; see also *People v. Petty* (2013) 213 Cal.App.4th 1410, 1421 [striking probation condition requiring the defendant to take antipsychotic medicine because there was no showing that it was "reasonably related to his criminal offense or his future criminality"]; *In re D.G., supra*, 187 Cal.App.4th at p. 53 [striking condition prohibiting the defendant from coming within 150 feet of school campus "[b]ecause there is nothing in his past or current offenses or his personal history that demonstrates a predisposition to commit crimes near school grounds or upon students, or leads to a specific expectation he might commit such crimes"]; *People v. Burton* (1981) 117 Cal.App.3d 382, 390 [striking condition prohibiting consuming alcoholic beverages because "there [was] no evidence in the record that appellant had ever been convicted of an alcohol-related offense [or] that he had manifested a propensity to become assaultive while drinking"].)

Ricardo argues that we have interpreted *Lent*'s third prong to require "a nexus between the probation condition and the defendant's underlying offense or prior offenses." We would not go that far. Requiring a nexus between the condition and the underlying offense would essentially fold *Lent*'s third prong into its first prong. We have said that "conditions of probation aimed at rehabilitating the offender need not be so strictly tied to the offender's precise crime" (*Moran, supra*, 1 Cal.5th at pp. 404–405) so long as they are "reasonably directed at curbing [the defendant's] future criminality" (*id.* at p. 404). For example, courts may properly base probation conditions upon information in a probation report that raises concerns about future criminality unrelated to a prior offense. (*People v. Lopez*

(1998) 66 Cal.App.4th 615, 623–625 [upholding condition that defendant avoid gang involvement].)

Yet *Lent*'s requirement that a probation condition must be " 'reasonably related to future criminality' " contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition. (*Lent*, *supra*, 15 Cal.3d at p. 486; see *People v. Fritchey* (1992) 2 Cal.App.4th 829, 837–838 [" '[A] reasonable condition of probation is not only fit and appropriate to the end in view but it must be a *reasonable* means to that end. Reasonable means are moderate, not excessive, not extreme, not demanding too much, well-balanced.' "].)

Such proportionality is lacking here. As noted, nothing in the record suggests that Ricardo has ever used an electronic device or social media in connection with criminal conduct. The juvenile court instead relied primarily on indications that Ricardo had previously used marijuana and its generalization that "minors typically will brag about their marijuana usage or drug usage, particularly their marijuana usage, by posting on the Internet, showing pictures of themselves with paraphernalia, or smoking marijuana." Based solely on these observations, the juvenile court imposed a sweeping probation condition requiring Ricardo to submit all of his electronic devices and passwords to search at any time. Such a condition significantly burdens privacy interests. (See *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35 ["privacy" guarantee in Cal. Const. art. I, § 1 protects individuals against "misuse of sensitive and confidential information ('informational privacy')"]; *Riley v. California* (2014) 573 U.S. 373, 393, 394, 395 (*Riley*) [a cell phone's "immense storage capacity" means it "collects in one place many distinct types of

information . . . that reveal much more in combination than any isolated record"; "[t]he sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions"; cell phone users "keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate"].) The warrantless search of a juvenile's electronic devices by a probation officer, a government official, plainly raises privacy concerns of a different order than parents checking their children's cell phones. (Cf. conc. & dis. opn. of Cantil-Sakauye, C.J., *post*, at p. 13.)

If we were to find this record sufficient to sustain the probation condition at issue, it is difficult to conceive of any case in which a comparable condition could not be imposed, especially given the constant and pervasive use of electronic devices and social media by juveniles today. In virtually every case, one could hypothesize that monitoring a probationer's electronic devices and social media might deter or prevent future criminal conduct. For example, an electronics search condition could be imposed on a defendant convicted of carrying an unregistered concealed weapon on the ground that text messages, e-mails, or online photos could reveal evidence that the defendant possesses contraband or is participating in a gang. (But see *People v. Bryant* (2017) 10 Cal.App.5th 396, 405 (*Bryant*), review granted June 28, 2017, S241937 [invalidating such a condition "in the absence of facts demonstrating ' " 'a predisposition' to utilize electronic devices . . . in connection with criminal activity" ' "].) Indeed, whatever crime a juvenile might have committed, it could be said that juveniles may use electronic devices and social media to mention or brag about their illicit activities.

The plain language of this electronics search condition would require Ricardo to provide probation officers full access, day or night, not only to his social media accounts but also to the contents of his e-mails, text messages, and search histories, all photographs and videos stored on his devices, as well as any other data accessible using electronic devices, which could include anything from banking information to private health or financial information to dating profiles. (See *Riley*, *supra*, 573 U.S. at p. 397 ["the data a user views on many modern cell phones may not in fact be stored on the device itself" in light of " 'cloud computing' "].) If the juvenile court's observation that "minors typically will brag about their marijuana usage or drug usage" online were sufficient to justify the substantial burdens the condition imposes, it is hard to see what would be left of *Lent*'s third prong.

We agree with our dissenting colleagues that our role in reviewing probation conditions for abuse of discretion is a limited one. (Conc. & dis. opn. of Cantil-Sakauye, C.J., *post*, at pp. 3–5, 16–17; see also *Sheena K.*, *supra*, 40 Cal.4th at p. 885 ["[C]haracteristically the trial court is in a considerably better position than [an appellate court] to review and modify a . . . probation condition that is premised upon the facts and circumstances of the individual case."].) But meaningful review requires more than speculation that the juvenile court had in mind "myriad considerations" that "cannot be completely accounted for through a relatively clinical and abstract proportionality assessment" on appeal. (Conc. & dis. opn. of Cantil-Sakauye, C.J., *post*, at pp. 16–17.) Even deferential review must be anchored in the record made by the juvenile court. This case involves a probation condition that imposes a very heavy burden on privacy with a very limited justification.

This disproportion leads us to conclude, on this record, that the electronics search condition is not " '*reasonably* related to future criminality' " and is therefore invalid under *Lent*. (*Lent*, *supra*, 15 Cal.3d at p. 486, italics added.) We do not decide whether there is sufficient basis in the present record to support the Court of Appeal's suggestion that the juvenile court, on remand, may restrict the condition to search of "electronic information that is reasonably likely to reveal whether Ricardo is boasting about his drug use or activity, such as text and voicemail messages, photographs, e-mails, and social-media accounts." Nor do we address how the parameters of such a condition might be delineated.

## III.

The Court of Appeal rested its analysis of *Lent*'s third prong entirely on *Olguin*, *supra*, 45 Cal.4th 375, where we considered whether "a condition of probation requiring defendant to notify his probation officer of the presence of any pets at defendant's place of residence" was "reasonably related to future criminality." (*Id.* at p. 378.) Olguin pleaded guilty to two counts of driving while intoxicated and was sentenced to three years of supervised probation. (*Ibid.*) He challenged a probation condition that required him to " '[k]eep the probation officer informed of place of residence, cohabitants and *pets*, and give written notice to the probation officer twenty-four (24) hours prior to any changes,' " arguing that "pet ownership . . . is not reasonably related to future criminality" under *Lent*. (*Id.* at p. 380.)

We rejected Olguin's argument, holding that "the notification condition in question is reasonably related to the supervision of defendant and hence to his rehabilitation and

potential future criminality." (*Olguin*, *supra*, 45 Cal.4th at p. 380.) This was so, we explained, because the notification condition "serves to inform and protect a probation officer charged with supervising a probationer's compliance with specific conditions of probation." (*Id.* at p. 381.) "Proper supervision includes the ability to make unscheduled visits and to conduct unannounced searches of the probationer's residence. Probation officer safety during these visits and searches is essential to the effective supervision of the probationer and thus assists in preventing future criminality." (*Ibid.*) We also dismissed Olguin's claim that the notification condition "restrict[ed] his ability to own a pet." (*Id.* at p. 382.) It required only that he "*inform* his probation officer of the presence of any pets at his place of residence"; it did not forbid him from owning pets or require him to obtain permission before doing so. (*Id.* at p. 383.) "Reporting the presence of pets to a probation officer," we said, "is a simple task, imposes no undue hardship or burden, and is a requirement that clearly falls within the bounds of reason." (*Id.* at p. 382.)

Like the Court of Appeal, the Attorney General characterizes *Olguin* as "unmistakably stand[ing] for the principle that conditions reasonably related to enhancing the effective supervision of probationers are valid under *Lent*." Ricardo argues that accepting this understanding of *Olguin* would "render[] *Lent* meaningless by broadening the third prong to allow any probation condition that enhances surveillance of the probationer."

We think Ricardo has the better argument. If we were to hold that any search condition facilitating supervision of probationers is "reasonably related to future criminality," we might be obligated to uphold under *Lent* a condition mandating

that probationers wear 24-hour body cameras or permit a probation officer to accompany them at all times. Such conditions would enhance supervision of probationers and ensure their compliance with other terms of probation. But they would not be reasonable because the burden on the probationer would be disproportionate to the legitimate interest in effective supervision.

Contrary to the Attorney General's reading of *Olguin*, the defendant in that case did not challenge the residence search condition itself; he objected only to the requirement that he *notify* the probation officer about any pets at his residence. (*Olguin*, *supra*, 45 Cal.4th at p. 380.) This notification requirement was reasonable, we said, because it "facilitat[ed] unannounced searches of [Olguin's] residence" to ensure compliance with the unchallenged probation search condition. (*Id.* at p. 382.) We had no occasion in *Olguin* to consider, let alone approve, the reasonableness of any search condition that would assist an officer in supervising a probationer's compliance with another term of probation.

It is true that our opinion in *Olguin* contains some expansive language — for example, "[a] condition of probation that enables a probation officer to supervise his or her charges effectively is . . . 'reasonably related to future criminality.' " (*Olguin*, *supra*, 45 Cal.4th at pp. 380–381.) But our reasoning reflected the specific circumstances presented by the pet notification condition at issue and emphasized the nonburdensome manner in which the condition helped to ensure the probation officer's safety and ability to properly supervise the probationer. In particular, we observed that the condition "serve[d] to inform and protect a probation officer" and that "the protection of the probation officer while performing supervisory

duties is reasonably related to the rehabilitation of a probationer for the purpose of deterring future criminality." (*Id.* at p. 381.) Reporting the presence of pets was a "simple task" (*id.* at p. 382) that did not "forbid defendant from owning pets" nor "require defendant to obtain permission from his probation officer in order to obtain or keep any pet" (*id.*at p. 383). Based on this reasoning, we held that the probation condition "imposes no undue hardship or burden, and is a requirement that clearly falls within the bounds of reason." (*Id.* at p. 382.) Compared to the minimally invasive pet notification requirement in *Olguin*, requiring a probationer to surrender electronic devices and passwords to search at any time is far more burdensome and intrusive, and requires a correspondingly substantial and particularized justification.

The fact that an electronics search condition may burden a juvenile probationer's constitutional rights does not necessarily render it invalid. (See *Sheena K.*, *supra*, 40 Cal.4th at p. 889; *In re Josh W.*, *supra*, 55 Cal.App.4th at p. 5 ["A juvenile court enjoys broad discretion to fashion conditions of probation for the purpose of rehabilitation and may even impose a condition of probation that would be unconstitutional or otherwise improper so long as it is tailored to specifically meet the needs of the juvenile."].) But the fact that substantial privacy concerns are involved here only highlights the differences between this case and *Olguin*, where "no fundamental or constitutional rights [we]re implicated by the challenged term of probation." (*Olguin, supra*, 45 Cal.4th at p. 378.) These significant differences have led several Courts of Appeal to reject the expansive reading of *Olguin* urged by the Attorney General and instead to conclude that *Olguin* does not compel a finding of reasonableness "for every probation

condition that may potentially assist a probation officer in supervising a probationer." (*People v. Soto* (2016) 245 Cal.App.4th 1219, 1227; see *Bryant, supra,* 10 Cal.App.5th at p. 404 ["The fact that a search of Bryant's cellular phone records might aid a probation officer in ascertaining Bryant's compliance with other conditions of supervision is, without more, an insufficient rationale to justify the impairment of Bryant's constitutionally protected interest in privacy."]; *In re J.B.* (2015) 242 Cal.App.4th 749, 758 ["The fact that a search condition would facilitate general oversight of the individual's activities is insufficient to justify an open-ended search condition permitting review of all information contained or accessible on . . . [a] smart phone or other electronic devices."].)

We likewise decline to read *Olguin* to categorically permit any probation conditions reasonably related to enhancing the effective supervision of a probationer. "Not every probation condition bearing a remote, attenuated, tangential, or diaphanous connection to future criminal conduct can be considered reasonable" under *Lent*. (*Brandão, supra,* 210 Cal.App.4th at p. 574.) Endorsing the Court of Appeal's broad reading of *Olguin* would effectively eliminate the reasonableness requirement in *Lent*'s third prong, for almost any condition can be described as "enhancing the effective supervision of a probationer."

The Attorney General also argues that invalidating the electronics search condition here would make it impossible for courts to impose "common" and "standard search conditions," such as those permitting warrantless searches of a juvenile probationer's person, property, and residence. But a property or residence search condition is likewise subject to *Lent*'s three-part test. Under the rule we set forth today, a juvenile court

imposing such a condition must consider whether, in light of "the facts and circumstances in each case" (*Bryant, supra*, 10 Cal.App.5th at p. 402), the burdens imposed by the condition are proportional to achieving some legitimate end of probation. Our determination that the electronics search condition here is not reasonably related to Ricardo's future criminality will not impair juvenile courts' ability to impose traditional search conditions in future cases when warranted.

Moreover, the Attorney General's argument does not sufficiently take into account the potentially greater breadth of searches of electronic devices compared to traditional property or residence searches. (See *Riley, supra*, 573 U.S. at pp. 396–397 ["[A] cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form — unless the phone is."].) As noted, the electronics search condition here is expansive in its scope: It allows probation officers to remotely access Ricardo's e-mail, text and voicemail messages, photos, and online accounts, including social media like Facebook and Twitter, at any time. It would potentially even allow officers to monitor Ricardo's text, phone, or video communications in real time. Further, the condition lacks any temporal limitations, permitting officers to access digital information that long predated the imposition of Ricardo's probation.

Our dissenting colleagues agree that the electronics search condition here "sweeps too broadly relative to its rationale," although they would reach this conclusion not under *Lent* but under constitutional overbreadth analysis, an issue on

which we did not grant review. (Conc. & dis. opn. of Cantil-Sakauye, C.J., *post*, at p. 19.) The dissent appears troubled by the fact that both *Lent*, as we interpret it here, and constitutional overbreadth analysis require a court to assess the relative burdens and benefits of probation conditions. (Conc. & dis. opn. of Cantil-Sakauye, C.J., *post*, at pp. 2, 15–16.) But *Lent* is an interpretation of the Legislature's requirement that probation conditions be "reasonable." (Pen. Code, § 1203.1, subd. (j); Welf. & Inst. Code, § 730, subd. (b).) That qualification indicates some concern with the fit between the means and legitimate ends of probation conditions: A probation condition that imposes substantially greater burdens on the probationer than the circumstances warrant is not a "reasonable" one. Indeed, the dissent acknowledges that *some* proportionality inquiry is warranted under *Lent*; how else to conclude that some highly intrusive (and presumably highly effective) means of supervising probationers would be "absurd"? (Conc. & dis. opn. of Cantil-Sakauye, C.J., *post*, at p. 11.)

The dissent also expresses concern that our approach saddles appellate courts with "an unduly exacting proportionality inquiry" for all probation conditions challenged under *Lent*, the kind of inquiry the dissent would reserve only for those probation conditions that implicate constitutional rights. (Conc. & dis. opn. of Cantil-Sakauye, C.J., *post*, at pp. 2, 16 fn. 9.) But probation conditions often implicate the probationer's liberty interests, and appellate courts are certainly capable of determining whether a condition's infringement on liberty is substantially disproportionate to the ends of reformation and rehabilitation. (See, e.g., *Sheena K.*, *supra,* 40 Cal.4th at p. 889; *In re White* (1979) 97 Cal.App.3d 141, 149–151; *Mason*, *supra,* 5 Cal.3d at p. 768 (dis. opn. of

21

Peters, J.) ["Where a condition of probation requires a waiver of precious constitutional rights, the condition must be narrowly drawn; to the extent it is overbroad it is *not* reasonably related to the compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights."].)  Of course, we must be mindful of "the superior ability of the trial and juvenile courts to gather and apply" information about the probationer. (Conc. & dis. opn. of Cantil-Sakauye, C.J., *post*, at p. 16.)  But there is no doctrinal or statutory basis, nor any basis in considerations of judicial competence, for declaring an inquiry into proportionality off-limits under *Lent*, even as it is required under constitutional overbreadth analysis.

In sum, we hold that the electronics search condition here is not reasonably related to future criminality and is therefore invalid under *Lent*.  Our holding does not categorically invalidate electronics search conditions.  In certain cases, the probationer's offense or personal history may provide the juvenile court with a sufficient factual basis from which it can determine that an electronics search condition is a proportional means of deterring the probationer from future criminality. (See *People v. Appleton* (2016) 245 Cal.App.4th 717, 724 [finding electronics search condition reasonable because the defendant lured victim using " 'either social media or some kind of computer software' "]; *In re Malik J.* (2015) 240 Cal.App.4th 896, 902 [condition allowing officers "to search a cell phone to determine whether [the defendant] is the owner" was reasonable in light of the defendant's "history of robbing people of their cell phones"]; *People v. Ebertowski* (2014) 228 Cal.App.4th 1170, 1173, 1176–1177 [finding electronics search condition related to the defendant's future criminality where the

defendant was convicted of making gang-related criminal threats and had previously used social media sites to promote his gang].) But in this case, on the record before us, the electronics search condition imposes a burden that is substantially disproportionate to the legitimate interests in promoting rehabilitation and public safety.

## CONCLUSION

We affirm the Court of Appeal's judgment striking the electronics search condition and remand to the Court of Appeal so that it may remand the case to the juvenile court for further proceedings consistent with this opinion.


**LIU, J.**


**We Concur:**

**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

In re RICARDO P.

S230923

Concurring and Dissenting Opinion by
Chief Justice Cantil-Sakauye

I concur in the remand of this matter for further proceedings as may be appropriate, but I respectfully dissent from the majority's rationale for doing so. The Court of Appeal got it right: The electronics search condition imposed by the juvenile court as a condition of probation satisfies the standard we adopted in *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) for the review of probation conditions, but it does not pass the distinct test for overbreadth that applies to the subset of conditions that implicate a probationer's constitutional rights. The juvenile court, acting in its distinctive, quasi-parental role, could properly require Ricardo P. (Ricardo) to provide probation officers with limited access to his social media, messaging, and e-mail accounts in order to deter and detect further marijuana use.[1] But the electronics search condition imposed by the juvenile court authorized far broader surveillance that served

_____

[1]     As imposed by the juvenile court, this condition required Ricardo to "[s]ubmit . . . electronics including passwords under [his] control to search by [p]robation [o]fficer or peace office[r] with or without a search warrant at any time of day or night." The condition did not require that a search be premised on reasonable suspicion that the electronic device or online account being searched contains evidence of a crime. (See *People v. Reyes* (1998) 19 Cal.4th 743, 752 [upholding a suspicionless search condition].) I do not read the majority as expressing any view regarding the validity, under *Lent*, of an otherwise equivalent search condition that includes such a requirement.

1

no similar purpose. The solution, as the Court of Appeal recognized, is to strike the condition and remand the matter to allow the juvenile court to impose a narrower electronics search condition, should it choose to do so.

As I will explain, my principal disagreement with the majority concerns its importation of an unduly exacting proportionality inquiry into the *Lent* framework. (See maj. opn., *ante*, at pp. 7, 12, 17, 23.) In expanding the *Lent* analysis, the majority needlessly subverts the multistep approach to appellate review of probation conditions that we have previously endorsed and applied.

Under our precedent, search conditions generally have been recognized as " 'reasonably related to future criminality' " (*Lent*, *supra*, 15 Cal.3d at p. 486), thereby satisfying *Lent*, without the additional proportionality assessment that the majority requires (see *People v. Olguin* (2008) 45 Cal.4th 375, 380-381 (*Olguin*)). Reserving closer scrutiny of a search condition for the subsequent overbreadth step of appellate review properly recognizes the broad discretion generally accorded to trial courts and especially juvenile courts in crafting appropriate conditions of probation. At the same time, it vindicates the principle that probation conditions that implicate constitutional rights and on that basis merit closer review must be properly tailored to the justifications behind them. This balanced multistep analysis, were it to be applied here, would adequately address the concerns raised by the majority about the electronics search condition that was imposed below. Because the majority's quite different approach departs from and in fact may threaten our viable, indeed preferable, existing methodology for reviewing probation conditions, I respectfully dissent in part.

## I. THE ELECTRONICS SEARCH CONDITION IMPOSED BY THE JUVENILE COURT SATISFIES *LENT*

### A. Trial Courts, and Especially Juvenile Courts, Have Broad Discretion in Crafting Appropriate Conditions of Probation

Probation is a creature of statute, and juveniles are treated differently from adults. With formal juvenile probation, the state, through the juvenile court, acts much like a parent would to provide guidance and direction to the delinquent ward. "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter." (Welf. & Inst. Code, § 202, subd. (b).) Thus, "When a ward . . . is placed under the supervision of the probation officer or committed to the care, custody, and control of the probation officer, . . . [t]he court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (*Id.*, § 730, subd. (b).)

With juvenile probationers, as with adult probationers, the Legislature has generally directed that conditions attached to probation must be "reasonable." (Pen. Code, § 1203.1, subd. (j); Welf. & Inst. Code, § 730, subd. (b).) But it is well-established that the juvenile court has *particularly* broad latitude in crafting appropriate conditions of probation. (*In re Sheena K.* (2007) 40 Cal.4th 875, 889; *In re Tyrell J.* (1994)

8 Cal.4th 68, 81-82, overruled on other grounds in *In re Jaime P.* (2006) 40 Cal.4th 128, 139.) This discretion includes the authority to impose conditions that could not properly be applied to an adult probationer in otherwise similar circumstances. (*In re Sheena K.*, at p. 889; *In re Tyrell J.*, at p. 81; *People v. Nassetta* (2016) 3 Cal.App.5th 699, 705, fn. 3; *In re Byron B.* (2004) 119 Cal.App.4th 1013, 1018; *In re Frankie J.* (1988) 198 Cal.App.3d 1149, 1153; *In re Todd L.* (1980) 113 Cal.App.3d 14, 20; cf. *Planned Parenthood of Missouri v. Danforth* (1976) 428 U.S. 52, 74 ["[t]he Court . . . long has recognized that the State has somewhat broader authority to regulate the activities of children than of adults"].) The reasonableness of these conditions is determined not only by the circumstances of the current offense, but also by reference to the minor's entire social history. (*In re Walter P.* (2009) 170 Cal.App.4th 95, 100.)

The conferral of especially broad latitude to the juvenile court to craft suitable conditions of probation — even conditions that implicate constitutional rights — recognizes that " '[j]uvenile probation is not an act of leniency, but is a final order made in the minor's best interest.' " (*In re Tyrell J.*, *supra*, 8 Cal.4th at p. 81; see also *In re Sheena K.*, *supra*, 40 Cal.4th at p. 889.) "[J]uveniles are deemed to be more in need of guidance and supervision than adults, and a . . . minor's constitutional rights are more circumscribed. The state, when it asserts jurisdiction over a minor, stands in the shoes of the parents. And a parent may 'curtail a child's exercise of . . . constitutional rights . . . [because a] parent's own constitutionally protected "liberty" includes the right to "bring up children" [citation,] and to "direct the upbringing and education of children." ' " (*In re Antonio R.* (2000) 78 Cal.App.4th 937, 941.)

The statutory scheme governing juvenile probation illustrates the wide variety of probation conditions that the Legislature regards as appropriate for a delinquent ward. These statutes explicitly place several probation conditions within the discretion of the juvenile court to impose, including conditions that the juvenile stay in school (Welf. & Inst. Code, § 729.2, subd. (a)), obey a curfew (*id.*, § 729.2, subd. (c)), submit to drug testing (*id.*, § 729.3), and apply any earnings as directed by the juvenile court (*id.*, § 730, subd. (b)). The Legislature has further directed that certain of these conditions, such as a curfew and school attendance, are mandatory unless the juvenile court makes a contrary finding. (*Id.*, § 729.2.)[2]

## B. *Lent* Must Be Understood as Part of a Larger Framework for the Evaluation of Probation Conditions

*Lent*, *supra*, 15 Cal.3d 481, meanwhile, supplies a framework for determining whether a condition of probation is "reasonable" and therefore authorized by the Legislature's general endorsement of such conditions.[3] (Pen. Code, § 1203.1, subd. (j); Welf. & Inst. Code, § 730, subd. (b); see *People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.) In *Lent*, we explained

---

[2] Even though a juvenile court acts in a quasi-parental capacity in its oversight of a juvenile adjudicated a delinquent and placed on formal probation, its authority and that of a parent are of course not exactly coextensive. Parents can do some things that the state cannot. (See, e.g., *Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 86; cf. *In re Dennis M.* (1969) 70 Cal.2d 444, 454.)

[3] The statutory requirement that a condition of probation be reasonable, whether imposed upon an adult probationer or a juvenile, long predates our decision in *Lent*. (See Stats. 1927, ch. 770, § 1, p. 1495; Stats. 1961, ch. 1616, § 2, p. 3487.)

that "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent*, at p. 486, quoting *People v. Dominguez* (1967) 256 Cal.App.2d 623, 627 (*Dominguez*).) This test condemns only probation conditions that satisfy all of its three prongs, i.e., conditions which do not have a relationship to the crime of conviction, relate only to noncriminal conduct, and require or forbid conduct which is not reasonably related to future criminality. (*People v. Moran* (2016) 1 Cal.5th 398, 403.) In applying *Lent*, we review the imposition of a probation condition for an abuse of discretion. (*Moran*, at p. 403.) "That is, a reviewing court will disturb the trial court's decision to impose a particular condition of probation only if, under all the circumstances, that choice is arbitrary and capricious and is wholly unreasonable." (*Ibid*.)

Significantly, we have recognized that an additional layer of analysis, above and beyond the *Lent* test, applies to the subset of probation conditions that implicate a probationer's constitutional rights. "A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the [probationer]'s constitutional rights — bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

The *Lent* test and the distinct inquiry into overbreadth represent complementary methods of ascertaining whether a probation condition is appropriate. When relevant, *Lent*'s third prong — whether a condition " 'requires or forbids conduct which is not reasonably related to future criminality' " (*Lent*, *supra*, 15 Cal.3d at p. 486) — entails a basic assessment of whether the condition, as applied to the defendant, represents a permissible method of achieving the goals associated with probation.[4] To the extent that this inquiry involves a proportionality inquiry, it is a circumscribed one, mindful of the broad discretion possessed by the trial court and, especially, the juvenile court in composing appropriate conditions of probation. For many conditions of probation, the inquiry will end there. Conditions

---

[4] Probation conditions have been rejected under *Lent* or similar standards when, among other things, they set goals beyond the probationer's ability to achieve (see, e.g., *In re Juan G.* (2003) 112 Cal.App.4th 1, 7-8), violate public policy, or have no relationship to the crime of conviction, criminal conduct, or the probationer's future criminality (see, e.g., *In re Bushman* (1970) 1 Cal.3d 767, 776-777). The condition imposed in *Dominguez*, *supra*, 256 Cal.App.2d 623, is illustrative. There the court directed the probationer, who had been convicted of robbery, " '[Y]ou are not to live with any man to whom you are not married and you are not to become pregnant until after you become married.' " (*Id*., at p. 625.) In finding this condition void, the Court of Appeal properly concluded that the "[a]ppellant's future pregnancy had no reasonable relationship to future criminality. It is certainly not pragmatically demonstrable that unmarried, pregnant women are disposed to commit crimes. There is no rational basis to believe that poor, unmarried women tend to commit crimes upon becoming pregnant. Contraceptive failure is not an indicium of criminality." (*Id*., at p. 627.)

that are fundamentally flawed fail the *Lent* test. Those that survive, but do not bear upon constitutional rights, warrant no further scrutiny. (See *In re Angel J.* (1992) 9 Cal.App.4th 1096, 1101.) When a condition that satisfies *Lent* also implicates the probationer's constitutional rights, however, a closer analysis is warranted, and is undertaken through a review for overbreadth. As so applied, the overbreadth inquiry serves to rein in conditions of probation that, although not intrinsically misguided, are nevertheless clearly excessive in their scope and therefore improper in light of their impact on constitutional rights.

It is unclear how literally *Lent*'s third prong should be applied to a condition of probation imposed upon a juvenile offender. The aims of juvenile probation are broader and more ambitious than merely avoiding future criminality (see Welf. & Inst. Code, § 202, subd. (b)), suggesting that the " 'reasonably related to future criminality' " criterion (*Lent*, *supra*, 15 Cal.3d at p. 486) should be given a particularly liberal construction in the juvenile context. On this point, the Legislature's endorsement of certain probation conditions having only an indirect relationship to a juvenile's future criminality, such as curfews (Welf. & Inst. Code, § 729.2, subd. (c)), fairly conveys that it regards a broad array of probation conditions to be "reasonable" (*id.*, § 730, subd. (b)) as they relate to juvenile probationers. And should any tension arise between the *Lent* test and the more fundamental inquiry into reasonableness compelled by the statutory scheme, it is *Lent*'s phrasing that must yield.

### C. The Electronics Search Condition Before Us Satisfies *Lent* as We Have Construed That Test

*Lent*'s third prong is satisfied here. Search conditions have long been recognized as reasonable tools for detecting and deterring future criminality by a probationer, and the juvenile court below could properly regard an electronics search condition, in particular, as a critical part of a probation plan designed to advance Ricardo's best interests.

Conditions of probation that allow for the warrantless search of a person and his or her residence and effects have been regarded as reasonable simply by reference to the offense of conviction, without any additional case-specific balancing of benefits and burdens. In *People v. Mason* (1971) 5 Cal.3d 759 (*Mason*), disapproved on another point in *Lent*, *supra*, 15 Cal.3d at page 486, footnote 1, we applied a variation of the *Lent* test and upheld a warrantless search condition that had been imposed after the defendant had been convicted of possession of marijuana. (*Mason*, at p. 764.)[5] We reasoned, "It seems beyond dispute that a condition of probation which requires a prior narcotics offender to submit to a search meets the test [for validity under state law], since that condition is reasonably related to the probationer's prior criminal conduct and is aimed at deterring or discovering subsequent criminal offenses. Indeed, the cases have held that such a condition is reasonable and valid, being 'related to [the probationer's] reformation and

---

[5] The probation condition in *Mason*, *supra*, 5 Cal.3d 759, "required [the probationer] to 'submit his person, place of residence, vehicle, to search and seizure at any time of the day or night, with or without a search warrant, whenever requested to do so by the Probation Officer or any law enforcement officer.'" (*Id.*, at p. 762.)

rehabilitation in the light of the offense of which he was convicted.'" (*Mason*, at p. 764, fn. omitted; see also *People v. Reyes*, *supra*, 19 Cal.4th at p. 752; *People v. Bravo* (1987) 43 Cal.3d 600, 610.)

This court adopted an even more categorical view of the relationship between *Lent*'s third prong and search conditions in *Olguin*, *supra*, 45 Cal.4th 375. There, we explained that "probation conditions authorizing searches 'aid in deterring further offenses . . . and in monitoring compliance with the terms of probation. [Citations.] By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers.' [Citation.] A condition of probation that enables a probation officer to supervise his or her charges effectively is, therefore, 'reasonably related to future criminality.'" (*Id*., at pp. 380-381.)[6]

---

[6] In this context, our opinion in *Olguin*, *supra*, 45 Cal.4th at page 381 cited with apparent approval the decision in *People v. Balestra* (1999) 76 Cal.App.4th 57, which had justified warrantless search conditions of probation on the following ground: "As our Supreme Court has recently (and repeatedly) made clear, a warrantless search condition is intended to ensure that the subject thereof is obeying the fundamental condition of all grants of probation, that is, the usual requirement (as here) that a probationer 'obey all laws.' Thus, warrantless search conditions serve a valid rehabilitative purpose, and because such a search condition is necessarily justified by its rehabilitative purpose, it is of no moment whether the underlying offense is reasonably related to theft, narcotics, or firearms." (*Id*., at p. 67.)

Here, affording probation officers access to Ricardo's electronic devices and accounts to detect and deter further marijuana use — which the juvenile court in its experience with juveniles reasonably regarded as connected to possible future unlawful behavior — would enable the officers "to supervise [Ricardo] effectively" (*Olguin*, *supra*, 45 Cal.4th at pp. 380-381), and "is, therefore, 'reasonably related to future criminality'" (*id.*, at p. 381).[7]  True, in authorizing the search of *all* of Ricardo's "electronics," the relevant search condition here may sweep more broadly than necessary to achieve the goals the juvenile court assigned to it.  But prior to today, we have not regarded such overbreadth as meaning that a search condition "'requires or forbids conduct which is not reasonably related to future criminality.'" (*Lent*, *supra*, 15 Cal.3d at p. 486.)  Instead, this inconsistency simply tees up an additional overbreadth analysis through which the condition can be more narrowly tailored.

I recognize that the discussion of *Lent*'s third prong in *Olguin*, *supra*, 45 Cal.4th at pages 380-381 must be read as stating a general, not an absolute, rule.  One can envision absurd methods of facilitating the supervision of a probationer that would not be "'reasonably related to future criminality.'" (*Lent*, *supra*, 15 Cal.3d at p. 486.)  But here, the electronics search condition, in the social media and communications environment of juveniles, is not so outlandish a method of

---

[7]  This is true even if the condition is justified solely by reference to a need to deter and detect Ricardo's marijuana use.  Conceivably, the condition also could have similar utility in ensuring that Ricardo complies with the juvenile court's order that he have no contact with the other perpetrators (his cousins) in the burglaries.

achieving its aims as to demand a deviation from the generally applicable principles this court recently articulated in *Olguin*. If *no* electronics search condition could be justified on the record before us, perhaps the situation would be a different one. In that case, we would be faced with an unsalvageable condition, not merely an overbroad one. But I do not believe that the juvenile court, acting in a quasi-parental role and charged with providing "care, treatment, and guidance" (Welf. & Inst. Code, § 202, subd. (b)) to Ricardo, acted wholly unreasonably in affording probation officers some access to Ricardo's electronic accounts to see if they contained evidence of ongoing marijuana use, especially given that Ricardo already had admitted to such use in terms suggesting that there was a connection between it and his delinquency.[8]

---

[8] As the majority explains (maj. opn., *ante*, at p. 2), Ricardo admitted to participating in two residential burglaries. He wore a mask in the first burglary, which was aborted when a resident entered. In the second burglary, the perpetrators obtained access by breaking a sliding glass door. They stole numerous pieces of costume jewelry from inside the house before leaving. When approached by officers who had been alerted to the burglary a few minutes after it occurred, Ricardo ran toward and tried to enter another residence, only to find the door locked. Upon being searched by police, *two cell phones* and a stolen bracelet were found in Ricardo's pants pocket.

In a subsequent interview with a probation officer, Ricardo admitted to smoking marijuana as a 17 year old, the same age he was at the time of the crimes. With regard to the burglaries, Ricardo reported that "he wasn't thinking," adding "that he stopped smoking marijuana after his arrest because he felt that [it] did not allow him to think clearly." The juvenile court explained that it relied on these admissions in imposing the electronics search condition.

At root, the court simply did what many concerned parents would. With or without signs of trouble, parents commonly monitor their teenagers' social media accounts, e-mails, and text messages. (See Anderson, Parents, Teens and Digital Monitoring (2016) Pew Research Center pp. 2 [reporting that 61% of surveyed parents had checked which websites their teenage child had visited, 60% had checked their teen's social media profiles, and 48% had looked through their teenage child's phone call records or text messages], 3 [reporting that 48% of surveyed parents know the password to their teen's e-mail account, 43% know the password to their teen's cell phone, and 35% know the password to at least one of their teen's social media accounts].) In doing so, parents may find communications regarding drug or alcohol use. (See Moreno et al., *A Longitudinal Investigation of Associations Between Marijuana Displays on Facebook and Self-Reported Behaviors Among College Students* (2018) 63 J. Adolesc. Health 313, 316 [reporting the results of a survey of college students revealing, inter alia, that "[a]pproximately 22% of participants who reported lifetime marijuana use displayed references to marijuana on Facebook"].) So obtained, a child's posts, texts, or e-mails can provide helpful insights into problems he or she may be struggling with. Furthermore, if the concern is that a child is using these channels to brag about illicit conduct, the prospect of disclosure to an authority figure may prevent him or her from engaging in this behavior at all. Although a parent might reasonably decide *not* to engage in this sort of supervision, it is also not entirely unreasonable for a parent, particularly a parent of a troubled teenager, to regard such oversight as appropriate.

The juvenile court, in its experience standing in the shoes of a parent, appears to have implicitly engaged in similar reasoning. The court had every reason to be worried that Ricardo might use marijuana again, that this use was connected to criminality, and that evidence of anticipated or actual use could be found in his social media or text accounts. If Ricardo were otherwise inclined to obtain or use marijuana and — alone or with others — text, e-mail, Instagram, Snapchat, or otherwise post about it, the electronics search condition imposed by the juvenile court would dampen this incentive to partake. (See *In re Jaime P., supra*, 40 Cal.4th at p. 137 ["the very existence of a probation search condition, whether for adults or juveniles, should amply deter further criminal acts"].) The condition also would allow probation officers to effectively monitor whether Ricardo had relapsed. Although the condition imposed by the juvenile court sweeps further than necessary to achieve the purposes assigned to it by the juvenile court, the fact remains that, in light of the unique role occupied by that court vis-à-vis Ricardo, it was reasonable for the juvenile court to impose some kind of electronics search condition here.

### D. The Majority's Concerns Are Better Addressed Through an Overbreadth Analysis than Through a Flawed Application of *Lent*

The majority does not hold otherwise. On the contrary, the majority reserves the question of whether a more narrowly defined electronics search condition, such as one along the lines suggested by the Court of Appeal, could be justified on the record before us (maj. opn., *ante*, at p. 15), and condemns only the broad condition imposed by the juvenile court. Thus, my disagreement with the majority concerns its reasoning more than the result it reaches. Specifically, the majority opines that "*Lent*'s

requirement that a probation condition must be ' "reasonably related to future criminality" ' contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Id*., at p. 12.)  It concludes that the electronics search condition here "does not satisfy *Lent*'s third prong because, on the record before us, the burden it imposes on Ricardo's privacy is substantially disproportionate to the countervailing interests of furthering his rehabilitation and protecting society."  (*Id*., at p. 7.)  The majority further asserts that all search conditions are likewise subject to a similar proportionality analysis.  (*Id*., at p. 20.)

The majority's construction of the *Lent* test as incorporating a case-specific appellate reweighing of the benefits and burdens associated with a given probation condition cannot easily be reconciled with our more categorical endorsements of search conditions in *Mason, supra*, 5 Cal.3d 759, and especially *Olguin, supra*, 45 Cal.4th 375, as discussed *ante*.  Perhaps more importantly, the majority's view and application of *Lent* essentially cannibalizes the overbreadth inquiry; it is unclear, after today's decision, precisely what is left of this second step of appellate review.  That might be fine if the majority's approach were a definite improvement on our existing methodology.  But as sketched by the majority, the expanded version of the *Lent* test — the coherency of which will depend on the appellate court being capable of identifying, distinguishing between, and assigning relative weights to the benefits and burdens attached to a probation condition — is inferior to our

well-established multistep inquiry as a method of assessing a probation condition's validity.[9]

This critique holds regardless of whether a method for reviewing probation conditions is evaluated by reference to whether it yields consistent results, its faithfulness to the statutory scheme, whether it adequately recognizes and protects the constitutional rights preserved by a probationer, or some other standard. My most pronounced concern regarding the majority's approach involves whether it fully accounts for the myriad considerations relevant to the imposition of a probation condition on a defendant or a delinquent ward, and the superior ability of the trial and juvenile courts to gather and apply this information. The juvenile court, unlike us, observed Ricardo in person. That court, experienced in presiding over juvenile matters, saw firsthand how Ricardo presents himself, and perhaps whether he is shy or outgoing, calm or quick to anger, contrite or defiant, and even whether and how often he uses a smartphone. In short, there is every reason to believe that the

---

[9]    The majority appears to take the position that the *Lent* analysis it endorses resembles an overbreadth inquiry in that both involve nuanced assessments of the benefits and burdens attached to a probation condition. (Maj. opn., *ante*, at pp. 21, 22.) But this assertion elides important differences between the two methodologies. Among them, the majority places no limits on the interests that must be accounted for in the *Lent* analysis, whereas overbreadth is concerned with avoiding undue constraints on *constitutional* rights. Moreover, a review for overbreadth assesses how a flawed, but not fundamentally misguided, condition might be narrowed to avoid needless impositions on constitutional rights. This focus lends itself to a more structured analysis than the fluid proportionality inquiry contemplated by the majority does, and in doing so complements the more fundamental inquiry that *Lent* is properly understood as entailing.

juvenile court had a much better sense of what Ricardo needs than we do, and a greater appreciation of not only what the benefits and burdens of a particular probation condition will be, but also whether they are distinct or intertwined.

We should respect these insights, which even with a robust record cannot be completely accounted for through a relatively clinical and abstract proportionality assessment undertaken on appeal. Although the majority purports to review for an abuse of discretion, it wields its view of *Lent* to engage in essentially de novo review of the electronics search condition before us. In a case such as this one, our conventional approach toward review of probation conditions better assimilates the juvenile court's comparative advantages with an appropriate degree of appellate oversight. Furthermore, whereas the majority simply casts the electronics search condition imposed by the juvenile court as unreasonable under *Lent*, and leaves that court to guess what sort of similar condition, if any, might pass muster, review for overbreadth more constructively considers how a probation condition might be appropriately tailored to respond to the juvenile court's concerns, without placing unnecessary impositions on constitutional rights.

The concerns behind the majority's construction of *Lent*, meanwhile, are either overstated or can properly be addressed through a review for overbreadth. The majority fears that if the electronics search condition here is found to satisfy *Lent*, then this type of condition (if not the precise condition before us) could be imposed as a matter of course in any case involving formal probation. (Maj. opn., *ante*, at p. 13.) Perhaps that would be true if the condition were justifiable on the sole ground that it was necessary to ensure that the probationer "obey all laws," a

17

generic term of probation. But the juvenile court offered a more specific rationale for the electronics search condition in this case. No analogous justification will exist, either on the record or as a matter of inference, in many other matters involving a grant of probation. Moreover, we are not concerned here with an adult probationer, with regard to whom the court's discretion in devising appropriate conditions of probation is more constrained.

The majority also emphasizes the unique qualities of electronic devices and online communications that could translate into the disclosure of particularly sensitive or voluminous information if a search condition applied to them. (Maj. opn., *ante*, at pp. 20-21.) But there is no indication that, in this case, these concerns cannot be adequately addressed by placing appropriate limits on the ability of probation officers to access Ricardo's information, whether through the selective provision of passwords or other measures. The electronics search condition being susceptible to such tailoring, the majority's concerns are better addressed through a separate overbreadth analysis.

## II. THE ELECTRONICS SEARCH CONDITION HERE IS OVERBROAD

The majority's construction of *Lent* might be better taken if the *Lent* test were the only way to address the flaw within the condition imposed by the juvenile court. But, again, there remains the separate inquiry into overbreadth. I agree with the majority that the electronics search condition implicated Ricardo's constitutional rights, supplying the necessary premise for engaging in an overbreadth analysis. (See *In re Jaime P.*, *supra*, 40 Cal.4th at p. 137 ["both parolees and probationers retain some expectation of privacy, albeit a reduced one"].) The

People have not contested the Court of Appeal's conclusion that this condition is, indeed, overbroad relative to the aims assigned to it. (See *In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.) As the Court of Appeal reasoned, in allowing for a search of "electronics," without limitation, the condition authorized searches of hardware and software with no relevant communicative capabilities. I therefore agree with the Court of Appeal that the condition must be struck, but the juvenile court should be free to consider whether to impose a narrower search condition on remand.

## III. CONCLUSION

The majority is correct that the electronics search condition before us is flawed; the condition sweeps too broadly relative to its rationale. But to avoid a construction of *Lent* that it regards as too deferential, the majority veers too far in the other direction. It is preferable as a matter of policy and more consistent with our precedent to recognize that the separate inquiry into overbreadth provides the proper method of identifying and rectifying the problems with conditions such as the one before us. I therefore concur in the remand of this matter but would do so for the reasons stated by the Court of Appeal, and with similar directions to those it issued.

**CANTIL-SAKAUYE, C. J.**


**We Concur:**

**CHIN, J.**
**CORRIGAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re Ricardo P.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 241 Cal.App.4th 676
**Rehearing Granted**

_____

**Opinion No.** S230923
**Date Filed:** August 15, 2019

_____

**Court:** Superior
**County:** Alameda
**Judge:** Leopoldo E. Dorado

_____

**Counsel:**

Megan Hailey-Dunsheath, under appointment by the Supreme Court, for Defendant and Appellant.

Nicole A. Ozer, Matthew T. Cagle, Christopher J. Conley; Peter Bibring; David Loy; Lee Tien, Jennifer Lynch and Jamie Williams for ACLU of Northern California, ACLU of Southern California, ACLU of San Diego and Imperial Counties and Electronic Frontier Foundation as Amici Curiae on behalf of Defendant and Appellant.

L. Richard Braucher; East Bay Community Law Center and Kate Weisburd for Pacific Juvenile Defender Center as Amicus Curiae on behalf of Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Laurence K. Sullivan, Donna M. Provenzano and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Megan Hailey-Dunsheath
1569 Solano Avenue, #457
Berkeley, CA  94707
(510) 853-0529

Christopher J. Conley
American Civil Liberties Union Foundation of Northern California, Inc.
39 Drumm Street
San Francisco, CA  94111
(415) 621-2493

Ronald E. Niver
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-5859