Filed 9/20/2019

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ALONZO M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. ALONZO M., Defendant and Appellant. | A154923 (Contra Costa County Super. Ct. No. J1800474) |

Alonzo M. appeals a July 2018 disposition order declaring him a ward of the juvenile court and placing him on probation subject to terms and conditions. (See Welf. & Inst. Code, § 602, subd. (a).) In particular, Alonzo challenges a condition of his probation that permits searches of his electronic devices. Although we find no abuse of discretion in the juvenile court's decision to impose an electronic search condition, we find the condition imposed here sweeps too broadly, and so remand for the juvenile court to consider imposing a narrower search condition.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I. The April 2018 Crime Spree**

On the morning of April 19, 2018, San Pablo police responded to a report of an early morning robbery in the parking lot of the Lytton Casino. The victim stated that the driver-side window of her Mercedes-Benz C300 had been smashed, somebody rummaged through her belongings and her Apple iPad Air was missing. While officers were taking the report, two other victims came forward. The second victim reported that

1

someone broke the driver-side window of his Dodge Ram and took his stainless-steel pressure cooker. The third victim reported that someone broke the driver-side window of his Mercedes-Benz E320 and took his black iPhone charger. Casino staff located three other vehicles with broken windows. Surveillance video showed a black Jetta pulling into the parking lot, and three suspects who exited the vehicle and looked into cars with flashlights. One suspect could be seen reaching into the window of a Toyota Rav-4.

Later that day, shortly before 10:00 p.m., a San Leandro Police officer noticed a black Jetta occupied by three males in a FoodMaxx parking lot. The officer did a records check, which revealed that the Jetta had been flagged for its possible involvement in the six auto burglaries committed in San Pablo earlier that day. The officer parked about 15 feet behind the Jetta and called for backup. While he was waiting, the driver of a Honda pickup truck parked one aisle away from the Jetta. After that driver went into the FoodMaxx, the Jetta moved through the parking lot and parked next to the passenger side of the Honda pickup. Alonzo got out of the Jetta and was standing next to the truck when the officer heard a pop and saw glass fall around Alonzo's feet. The officer used his car to block the Jetta from moving. When back-up arrived, Alonzo and two other occupants of the Jetta were taken into custody.

In the Jetta, police found a purse that matched the description of a purse belonging to the victim of a nearby robbery. The victim had reported that after shopping at the 99 Cent Store she was placing items in her trunk when she noticed a black vehicle pull up in front of her car. She sensed something was wrong and went to get in her car, but just as she sat in the driver's seat, a person grabbed her left arm, dragged her out of her car, and forcefully pulled her purse off her shoulder.

Other items found in the Jetta included: a black window punch; two flashlights; a set of keys for miscellaneous vehicles, including a Chevrolet, Lexus and Dodge; and two iPhones, one which had a picture of Alonzo on the screen. Police also found a grey bag containing a laptop, a driver's license and credit cards, which belonged to the victim of another purse snatch that had been committed in Hayward earlier that day.

2

The two individuals who were arrested along with Alonzo declined to talk with police. Alonzo reported that one of the others committed the purse snatches, but he admitted that he broke into the Honda pickup. Alonzo also admitted that he and the others agreed to split the money from their crime spree.

## II. The Petitions

On April 23, 2018, the Alameda County District Attorney filed a wardship petition alleging that 17-year-old Alonzo committed three felonies in San Leandro: second degree robbery (Pen. Code § 211)[1]; second degree burglary (§ 459); and receiving stolen property (§ 496, subd. (a)). Alonzo was detained pending a hearing. The probation department contacted Alonzo's mother (Mother), who reported that Alonzo was respectful at home and had no behavior problems. However, the past six months had been a tumultuous period and a struggle for Alonzo because his father was suffering from a mental illness and Alonzo had been helping to care for him.

At the detention hearing, Alonzo admitted an amended allegation that he committed grand theft of a person, taking property valued at more than $950 (Pen. Code § 487, subd. (c)). In exchange for his admission, the court dismissed the other two charges alleged in the petition. The probation department (the department) recommended that Alonzo remain in detention pending disposition and the People concurred. However, the court ordered that Alonzo was to be placed on GPS monitoring and released to the custody of Mother. The court also found that Alonzo's legal residence was the home of Mother, who was living in Antioch, and ordered that Alonzo's case be transferred to Contra Costa County for disposition.

On May 8, 2018, the Contra Costa County juvenile court accepted transfer of Alonzo's case. The court ordered Alonzo to remain on GPS monitoring pending disposition due to the serious nature of the charges and the fact that his school records showed significant absences. The court further ordered that Alonzo was to have no

---

[1] Subsequent references are to the Penal Code, unless otherwise indicated.

3

contact with his "co-responsibles," either directly or indirectly through a third party or electronically.

On May 22, 2018, the Contra Costa County District Attorney filed a supplemental petition alleging that Alonzo committed three additional felonies in San Pablo during the morning of the April 2018 crime spree. Each new charge was based on allegations that Alonzo committed second degree vehicular burglary with intent to commit larceny. (§ 459/460, subd. (b)).

On June 19, 2018, Alonzo entered a plea of no contest to an amended allegation that he committed a misdemeanor burglary. (§ 459/460, subd. (b).) The other two counts in the supplemental petition were dismissed in the interests of justice after Alonzo agreed to pay restitution to the victims of those crimes. Alonzo's counsel asked the court to remove Alonzo's ankle monitor because he was doing well at home and school. The department and the prosecutor both objected that Alonzo committed multiple serious offenses in two different counties and that close supervision was imperative. The court ordered that Alonzo was to remain on the ankle monitor pending disposition.

## III. The Disposition Report and Recommendations

According to the probation report, Alonzo and Mother had been living in Contra Costa county since December 2017, when they moved into the Antioch home of Alonzo's father (Father) and step-mother. Father had been suffering from depression and the family was caring for him at his home. Alonzo continued to attend high school in Oakland.

The probation officer interviewed Mother and Alonzo before making recommendations. Mother reported she was " 'hurt' " that Alonzo had engaged in delinquent behavior, something she never imagined happening. Mother stated that she could not explain Alonzo's recent change in behavior, but she suspected he succumbed to peer pressure. Previously, Alonzo had been disciplined at school only once, for participating in a fight when he was in 9th grade. Alonzo was usually respectful at home, but when he misbehaved, Mother punished him by grounding him and restricting his use of electronic devices.

4

During his interview, Alonzo was respectful, remorseful and occasionally emotional. He said that on the morning of April 19, the other two individuals were boasting about making money. Alonzo was intrigued by their large amounts of cash and asked how they acquired it. They said they had been " 'bippin cars' " and stealing purses and other things. Alonzo accompanied the two individuals to San Pablo but stayed in the car while they broke into three separate vehicles. Alonzo said his cohorts tried to get him to steal a purse from a woman outside the 99 Cent Store, but he refused, so one of them did it. Then the group drove to San Leandro, where they told Alonzo to break into a Honda truck and steal things from inside, which he agreed to do. But after he broke the truck window, an undercover police officer detained them.

Alonzo told the probation officer that he participated in the crimes for financial gain, and he realized he had made a big mistake. He expressed disappointment in himself and remorse for the trouble he caused his family and victims. He claimed he was inexperienced and had not done this type of thing before, pointing out that he had no criminal record. He reported that he had met his co-responsibles through a group of friends in Oakland, did not know them well, and did not know that they committed burglaries until the day that he participated in their crimes. Alonzo said that the main reason he became involved in criminal activity was because of his negative social environment and negative peer group in Oakland.

Alonzo reported that he spent his free time working on cars, collecting shoes, playing video games and making music with friends. He said he preferred small groups of boys his own age and denied associating with gangs or people on probation. He denied using alcohol but reported that he had been smoking marijuana once a day, explaining that he suffered from chronic migraines and that his marijuana use was purely medicinal. His plans included graduating high school, making things right with the justice system, and moving to Las Vegas to live with his grandmother.

The department reported that while this was Alonzo's first referral, his offenses were serious. He and Mother both claimed that this conduct was out-of-character and attributed it to "the misfortune of temptation and poor peer association." Therefore, the

department opined that Alonzo's rehabilitation hinged on him refraining from future delinquent behavior and learning to associate with more positive peer groups. The department also expressed concern that Alonzo had been self-medicating with marijuana and stated that it was imperative to his rehabilitation that he abstain from using the drug and find another way to address his migraines. Ultimately, the department recommended that the court adjudge Alonzo a ward of the juvenile court, require that he serve an additional 30 days on Home Supervision, and then order him to reside in Father's home in Contra Costa under the supervision of a probation officer.

## IV. Disposition

On July 9, 2018, the juvenile court held a disposition hearing on sustained charges of felony grand theft in Alameda County and misdemeanor burglary in Contra Costa County. At the beginning of the hearing, Alonzo's counsel advised the court that Alonzo and his mother were living in Oakland. Mother's job was there, and Alonzo had recently secured a job in Union City, so they planned to stay in Oakland. Turning to the merits, Alonzo's counsel objected to the recommendation that Alonzo remain on Home Supervision but otherwise accepted the probation department's recommendation that Alonzo be placed on probation.

The People opposed the department's recommendation, arguing that a placement at "the Ranch" was appropriate because Alonzo and the two co-responsibles committed seven vehicular burglaries as well as a robbery that injured the victim. The prosecutor pointed out that Alonzo was almost 18 when he and his cohorts committed their late-night crimes one after the other, causing substantial harm to multiple parties. The probation officer responded that given the gravity of the offenses, a recommendation of 30 additional days on Home Supervision was a bit lenient. Thus, he modified the department's recommendation to propose an additional 60 days but opposed placement at a Boy's Ranch on the ground that Alonzo should have the opportunity to get services while out in the community.

Alonzo's counsel argued there was not good evidence that Alonzo committed any robbery but acknowledged that he associated with people who did. Defense counsel

6

argued that since the day when the crimes occurred, Alonzo had done everything that was asked of him and it was not fair to extend Home Supervision again, especially when he had recently secured employment, working at a warehouse five days a week. The court asked how Alonzo was going to work and attend school. Alonzo responded that he was completing school on the computer, checking in with his teacher and principal online.

After the matter was submitted, the court expressed two concerns before ruling. First, Alonzo was now 18, which meant that if he repeated any of the actions that resulted in his wardship, even sitting in the back of a car and emboldening others to commit crimes, there would be no further talk about rehabilitation or doing what was best for Alonzo; he would go to jail or prison. Second, the court was concerned about the family's decision to move back to Oakland when Alonzo had blamed his predicament on the negative influences he fell under the sway of there. Alonzo responded that he had not actually moved to Oakland yet, but was going back and forth because of his job. He also reiterated that he wanted to move to Las Vegas. The court responded that Alonzo would encounter negative influences no matter where he lived, and the question was whether he could avoid succumbing to them.

Then the court adjudged Alonzo a ward of the court and ordered that he serve an additional 30 days on Home Supervision, but it granted him permission to go to work after producing proof of employment. The court imposed multiple probation conditions, which included that Alonzo not knowingly use illegal drugs or alcohol, that he participate in substance abuse testing, and that he not knowingly possess weapons or burglary tools. The court also imposed a condition requiring Alonzo to have no contact whatsoever—directly, indirectly, through a third party, or through electronic means—with his two co-responsibles. Nor was Alonzo to associate with anyone that he knew to be disapproved of by his parents or probation.

Although not recommended by the department, the court also imposed an electronic search condition, stating: "In light of the nature of the conduct in this case and my order of stay-away from the co-responsibles and concern about your association in Oakland, I am going to order that you must submit your cell phone or any other

7

electronic device under your control to a search of any medium of communication reasonably likely to reveal whether you're complying with the terms of your probation with or without a search warrant at any time of day or night. Such medium of communication includes text messages, voicemail messages, photographs, e-mail accounts and other social media accounts and applications. You shall provide access codes to probation or any other peace officer upon request to effectuate the search."

Alonzo's counsel objected to the electronic search condition, without elaborating as to the basis for her objection. The court's rulings were memorialized in a minute order, which lists the terms of probation and also includes orders to drug test, complete community service and pay victim restitution.

## DISCUSSION

Alonzo contends that the electronic search condition must be stricken because any such condition is unreasonable under the standards announced by our Supreme Court in *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*). We disagree that imposing an electronic search condition here is inconsistent with *Lent* but find that the particular condition must be modified in light of the California Supreme Court's recent decision in *In re Ricardo P*. (2019) 7 Cal.5th 1113 (*Ricardo P*.).

### I. The *Lent* Test

" 'A juvenile court enjoys broad discretion to fashion conditions of probation for the purpose of rehabilitation and may even impose a condition of probation that would be unconstitutional or otherwise improper so long as it is tailored to specifically meet the needs of the juvenile.' " (*In re J.B.* (2015) 242 Cal.App.4th 749, 753-754 (*J.B.*).) "The reasonableness and propriety of the imposed condition is measured not just by the circumstances of the current offense, but by the minor's entire social history." (*Id*. at p. 754.)

Though broad, the juvenile court's discretion has limits. Under *Lent*, which applies to both juvenile and adult probationers, a probation condition is invalid if it " ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not

8

reasonably related to future criminality." ' [Citations.] 'This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term.' " (*In re P.O.* (2016) 246 Cal.App.4th 288, 294 (*P.O.*).)

Alonzo's electronic search condition cannot be upheld under either of the first two prongs of the *Lent* test. First, the condition has no relationship to the automobile burglaries or purse snatch robberies described above. Second, there is nothing inherently illegal about using electronic devices. (See *P.O., supra*, 246 Cal.App.4th at p. 294.) Thus, the issue presented by this appeal is whether the electronic search condition is invalid because it also meets the third prong of the *Lent* test in that it is not reasonably related to Alonzo's future criminality. The California Supreme Court addressed an analogous issue in *Ricardo P.*

In *Ricardo P.*, a 17-year-old minor who admitted committing two felony burglaries was declared a ward of the court and placed on probation. Ricardo objected to two probation conditions the juvenile court imposed. (*Ricardo P., supra,* 7 Cal.5th at p. 1115.) First, the court prohibited him from using or possessing illegal drugs. The court found this condition was appropriate because Ricardo had admitted to the probation officer that when he committed the current offenses he " 'wasn't thinking,' " and that he had recently stopped smoking marijuana because it made it difficult for him to " 'think clearly.' " (*Id.* at p. 1116.) Second, the court imposed a warrantless electronic search condition because it found that minors typically use the internet to brag about marijuana usage and Ricardo's statements to the probation officer amounted to an admission that marijuana was involved in the commission of his offenses. (*Id.* at pp. 1116–1117.) On appeal from the disposition order, the Court of Appeal concluded that the electronic search condition did not violate the third prong of the *Lent* test because it was reasonably related to Ricardo's future criminality. (*Ricardo P.*, at p. 1176.) A majority of the California Supreme Court disagreed. (*Id.* at p. 1129.)

The *Ricardo P.* court found that the electronic search condition was not valid under the third prong of *Lent* as a measure that was reasonably related to future criminality because the burden it imposed on Ricardo's privacy was "substantially

9

disproportionate to the condition's goal of monitoring and deterring drug use." (*Ricardo P.*, *supra,* 7 Cal.5th at p. 1120.) Preliminarily, the court expressed skepticism about the juvenile court's premises that marijuana use played a role in Ricardo's crimes and that minors like him brag about drug use on social media. (*Id*. at pp. 1119–1120.) But, even accepting those premises, there was no evidence Ricardo had ever used an electronic device or social media to engage in criminal activity, nor to discuss illegal drugs. (*Id*. at pp. 1119, 1122.) Thus, the only possible justification in the record for subjecting Ricardo to an electronic search condition was a generalized impression that minors use social media to brag about marijuana use. This purpose was substantially disproportionate to the "sweeping" invasion of sensitive and confidential information authorized by the search term, which "significantly" burdened Ricardo's constitutionally protected privacy interests. (*Ricardo P*., at pp. 1122–1123.) The *Ricardo P*. court found that if the juvenile court's stated purpose for imposing the search condition justified imposing such a heavy burden on Ricardo's privacy, the third prong of *Lent* would essentially be meaningless. (*Id*. at pp. 1123–1124.)

*Ricardo P*. does not "categorically invalidate electronic search conditions" in juvenile delinquency cases. (*Ricardo P*., *supra,* 7 Cal.5th at p. 1128.) Indeed, the court declined to rule out the possibility that the record evidence in that case might justify a more tailored search for electronic data that was "reasonably likely to reveal" whether Ricardo was bragging about his drug-related activities. (*Id*. at p. 11124.) The court held only that the broad search condition, as written and imposed by the juvenile court, was invalid under *Lent* because it was not reasonably related to Ricardo's future criminality. It then remanded the case for further proceedings. (*Id*. at pp. 1128–1129.)

From *Ricardo P*. we glean the following guidelines for determining when an electronic search condition survives the third prong of *Lent* in a juvenile delinquency case. First, there must be information in the record establishing a connection between the search condition and the probationer's criminal conduct or personal history—an actual connection apparent in the evidence, not one that is just abstract or hypothetical. (*Ricardo P.,* at pp. 1120–1121.) But no nexus between the search condition and the

minor's underlying offense is required. "[C]ourts may properly base probation conditions upon information in a probation report that raises concerns about future criminality unrelated to" past criminal conduct. (*Id*. at p. 1122.) Finally, "the burden imposed by [the] probation condition" must be proportionate to "the legitimate interests served by the condition." (*Ibid*.) Thus, " '[a] condition of probation that enables a probation officer to supervise his or her charges effectively is . . . "*reasonably* related to future criminality," ' " only if its infringement on the probationer's liberty is not "substantially disproportionate to the ends of reformation and rehabilitation." (*Id*. at pp. 1126, 1129, italics added.)

## II. Analysis

Applying *Ricardo P.*, we conclude that subjecting Alonzo to an electronic search condition is permissible under the third prong of the *Lent* test. In contrast to the nebulous concern about marijuana use in *Ricardo P.*, in the present case the juvenile court made a reasoned, evidence-based finding that Alonzo's successful rehabilitation depends on avoiding negative social influences. Alonzo and Mother both attributed Alonzo's delinquent behavior to the people he socialized with in Oakland, where he sometimes lived, went to school, and planned to work. Thus, one probation condition that was imposed without objection requires Alonzo to stay away from his co-responsibles and from other people of whom his parents or the probation officer disapprove.

Moreover, the record shows that Alonzo spends a significant amount of his time using electronic devices: He had his cellphone with him during the April 2018 crime spree; he planned to complete his high school education online; and his hobbies include playing video games and making music with friends. Although there is no evidence Alonzo used an electronic device during the crime spree, several of the stolen items found in the Jetta were electronic devices. And Alonzo and Mother both reported that restricting Alonzo's use of electronic devices is an effective discipline measure in the home. Considering Alonzo's ongoing connections to both Antioch and Oakland against the backdrop of his daily use of electronic devices, we see no abuse of discretion in the juvenile court's conclusion that a properly drawn electronic search condition would help

11

to ensure that Alonzo does not again succumb to the negative influences he blames for the criminal behavior that led to this wardship.

Alonzo contends that subjecting him to an electronic search because he is exposed to negative influences in a low-income, high-crime neighborhood violates his right to equal protection because juvenile wards in more affluent areas would not be forced to suffer this type of invasion of their privacy rights. This argument, made for the first time on appeal, misconstrues the juvenile court's ruling. Alonzo himself attributed his predicament to negative peer influences in Oakland, which he had been unable to resist. Despite those negative peer pressures, Alonzo and Mother decided to leave Antioch and return to Oakland. These decisions reinforced the court's reasonable determination that an electronic search condition would facilitate effective supervision of Alonzo by helping to ensure that he does not succumb to the same negative influences in the future. This court would have no trouble affirming a similar order for a juvenile in an affluent neighborhood who showed a similar propensity for following friends into criminal conduct.

Nevertheless, following *Ricardo P.* we conclude that when the juvenile court imposed the electronic search condition in this case, it used language too broad to survive scrutiny. At the disposition hearing, the court clearly stated that the purpose of this condition was to address Alonzo's susceptibility to negative social influences, including but not limited to the two co-responsibles for whom a stay-away order was imposed.

This is a legitimate rehabilitative interest that a properly drawn electronic search term can serve. But the electronic search condition here is not limited to monitoring the company Alonzo keeps. It authorizes "search of any medium of communication reasonably likely to reveal whether [Alonzo is] complying with the terms of [his] probation" generally. Since Alonzo has probation conditions in addition to the no-contact orders—such as a requirement that he abstain from using drugs or alcohol—this probation condition would appear to allow probation officers and police to peruse the content of Alonzo's communications to see whether he is, for example, boasting of illegal drug use. After *Ricardo P.*, we conclude that a search clause of this magnitude is not

12

permissible in a case such as this one, where the record discloses no connection between the probationer's use of electronics and his drug use or other criminality. (*Ricardo P.*, *supra,* 7 Cal.5th at p. 1115.) This wide-ranging search clause burdens Alonzo's privacy in a manner substantially disproportionate to the probation department's legitimate interest in monitoring Alonzo's compliance with the stay-away orders. Under *Ricardo P.*, the search term is not " 'reasonably related to future criminality' " (*Lent*, *supra*, 15 Cal.3d at p. 486), and must accordingly be limited.[2]

But because the juvenile court properly concluded that an electronic search term in some form could be imposed as a condition of Alonzo's probation, we will follow the recommendation of both parties and remand the case for further proceedings in the juvenile court. Applying the reasoning of *Ricardo P.*, the juvenile court may impose an electronic search condition that is more narrowly tailored to allowing search of any medium of communication reasonably likely to reveal whether Alonzo is associating with prohibited persons. The burden on Alonzo's privacy must be substantially proportionate to the probation department's legitimate interest in preventing him from communicating with his co-responsibles or other identified peers who might draw him in to criminal conduct.[3]

## DISPOSITION

The disposition order is affirmed except for the provision imposing an electronic search condition, which is stricken, and the case is remanded so the court may consider whether to adopt an electronic search condition consistent with this opinion.

---

[2] Reaching this conclusion, we find it unnecessary to address Alonzo's separate claim that the electronic search condition is unconstitutionally overbroad.

[3] In other cases, there may be justification for permitting the search of media of communications for the purpose of monitoring other conditions of probation that are appropriate in light of the individual's misconduct or personal history.

13

 

 

 

_____
                 TUCHER, J.

WE CONCUR:

 

_____
POLLAK, P. J.

_____
STREETER, J.

 

*In re Alonzo M.* (A154923)

Trial Court:        Contra Costa County Superior Court

Trial Judge:        Hon. Rebecca C. Hardie

Counsel for Appellant:    Violet Elizabeth Grayson, by Court-Appointment under the First District Appellate Project's Independent Case System

Counsel for Respondents:   Xavier Becerra, Attorney General; Gerald A. Engler, Chief Assistant Attorney General; Jeffrey M. Laurence, Senior Assistant Attorney General; Eric D. Share, Supervising Deputy Attorney General; Ronald E. Niver, Deputy Attorney General