Filed 8/18/20  In re A.W. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.W., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.W.,<br><br>    Defendant and Appellant. | A157072<br><br>(Contra Costa County Super. Ct. No. J19-00202) |

A.W. appeals from the juvenile court's dispositional order placing him on home supervision and imposing various conditions, including an electronic search condition.  His sole contention on appeal is that the electronic search condition should be stricken pursuant to *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), because it bears no reasonable relationship to his offense or history.  We conclude the juvenile court did not abuse its discretion in imposing an electronic search condition, but that the language of the condition requires refinement to comply with *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.)*, and therefore remand for further consideration.

1

The Contra Costa County District Attorney filed a Welfare and Institutions Code section 602 petition alleging A.W. committed felony second degree burglary of a vehicle. (Pen. Code, § 459.) The probation officer's report indicates the allegation arose from an incident in which Oakland police officers detained A.W. and another individual after the two were found standing next to the broken window of an open rear-passenger door of a vehicle in a parking lot. A.W. stated they were "trying to hang out with their female friends," and they "needed a 'whip' " because they "did not want to walk in the cold." The other individual "used a rock to break the window" but then "did not know how to start the vehicle."

During A.W.'s interview with probation, he expressed remorse for the crime and stated it was "spontaneous, unplanned, and he was unaware [the other individual] was going to break into a vehicle." When asked about his " 'Ghost Town' " gang associations, A.W. responded, " 'That's what I bang.' " A.W. confirmed he "associates with" Ghost Town, and the gang's activities included " 'Shooting [and] Killing.' " When asked if these activities bothered him he replied, " "Doesn't bother me. Killing is part of life. If they want to go kill somebody, they can. I don't care.' " Although he denied participating in these activities, he acknowledged "other members have tried to recruit him to participate in these activities." A.W. had lost three friends to "gang violence" and stated that after their deaths he was " 'ready to kill' the rival gang members." He reported his cousin associated with a different gang, "Murder Dubs."

A.W. had a "good relationship" with his mother who he lived with and stated that if he does not follow the rules at home, she "will take away his phone and video games." A.W. had "sporadic[]" attendance at several

different schools, one of which reported he "ha[d] been associating with 'NBM,' a local street gang." When school officials suggested a different school, A.W. "objected because of 'rivals that attend' that particular school."

Mother stated A.W. had about 10 friends but she "generally does not allow visitors into their home" and they mostly "spend their time fixing dilapidated bicycles." Mother did not know about minor's gang associations, and when asked by probation about A.W.'s "gang related statements," mother responded, " 'This is the first time I've heard about this.' " She maintained A.W. was a "good kid who can be easily influenced."

Probation concluded an electronic search condition was "necessary to properly supervise the minor and ensure he was adhering to the terms of his Probation, particularly disassociating from his negative peers."

After admitting to an amended allegation of misdemeanor second degree burglary, the juvenile court placed A.W. on 120 days' home supervision and imposed numerous probation conditions, including a gang condition to which A.W. did not object and an electronic search condition to which he did.

The electronic search condition required A.W. to "[s]ubmit your cell phone and any other electronic device under your control to a search of any medium of communication reasonably likely to reveal whether you are complying with the terms of your probation, with or without a search warrant, at any time of the day or night. Such medium of communication includes text messages, voicemail messages, call logs, photographs, email accounts and other social media accounts and applications such as Snapchat, Instagram, Facebook, and Kik. You shall provide access codes to the Probation Officer or any other peace officer upon request to effectuate such search."

The court was very concerned about A.W.'s gang association claims, stating, "You are frightening to me when I read this stuff. It's scary. Your attorney thinks you're bragging. I hope she's right, because you're glamorizing death and murder and all sorts of awful things. You're glamorizing, certainly, . . . terrible things that you say—terrible things that you say about people. [¶] . . . [¶] I think the recommendations are very appropriate, and, given his obsession with the gangs and all his discussion, I hope [your attorney] is right that it's just bragging, but I can't take that chance. [¶] So I am following all the recommendations. I think the electronic monitoring is very important, and I certainly think the gang terms– all of that is very important."

## DISCUSSION

"Under Welfare and Institutions Code section 730, subdivision (b), the court 'may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' 'The juvenile court has wide discretion to select appropriate conditions,' but '[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad.' [Citations.] 'A condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court.' [Citation.] On appeal, we ' "review conditions of probation for abuse of discretion." ' [Citation.] Specifically, we review a probation condition 'for an indication that the condition is "arbitrary or capricious" or otherwise exceeds the bounds of reason under the circumstances.' " (*Ricardo P., supra,* 7 Cal.5th at p. 1118.)

4

Under *Lent*, *supra*, 15 Cal.3d at page 486,[1] " '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' " (*Ricardo P., supra,* 7 Cal.5th at p. 1118.)

"The *Lent* test 'is conjunctive–all three prongs must be satisfied before a reviewing court will invalidate a probation term.' " (*Ricardo P., supra,* 7 Cal.5th at p. 1118.)  The Attorney General concedes "the record does not show [A.W.] used electronic devices to commit his current offense."  Thus, the issue in this case concerns *Lent's* third prong.

*Ricardo P.* guides our analysis.  In that case, our Supreme Court held a broad electronic search condition was not valid under *Lent.* (*Ricardo P., supra,* 7 Cal.5th at pp. 1115-1116.)  In that case, the juvenile was placed on probation after admitting to two counts of burglary.  (*Id.* at p. 1116.)  Nothing in the youth's record suggested he had "ever used an electronic device or social media in connection with criminal conduct."  (*Id.* at p. 1122.)  Yet, the juvenile court concluded an electronic search condition was necessary to prevent future crime because " 'minors typically will brag about their marijuana usage or drug usage . . . by posting on the Internet, showing pictures of themselves with paraphernalia, or smoking marijuana.' " (*Id.* at p. 1117.)

This was an insufficient basis for the search condition, said the Supreme Court, because the "the burden [the electronic search condition] imposes on Ricardo's privacy is substantially disproportionate to the

---

[1]  Superseded by statute on other grounds as stated in *People v. Moran* (2016) 1 Cal.5th 398.

countervailing interests of furthering his rehabilitation and protecting society." (*Ricardo P., supra,* 7 Cal.5th at p. 1119.) If it were sufficient, "[i]n virtually every case, one could hypothesize that monitoring a probationer's electronic devices and social media might deter or prevent future criminal conduct." (*Id.* at p. 1123.)

The court hastened to add its reasoning did "not categorically invalidate electronics search conditions. In certain cases, the probationer's offense or personal history may provide the juvenile court with a sufficient factual basis from which it can determine that an electronics search condition is a proportional means of deterring the probationer from future criminality." (*Ricardo P., supra*, 7 Cal.5th at pp. 1128-1129.)

In *In re Alonzo M.* (2019) 40 Cal.App.5th 156, 166 (*Alonzo M.*) our colleagues in Division Four analyzed *Ricardo P.* and "glean[ed] the following guidelines for determining when an electronic search condition survives the third prong of *Lent* in a juvenile delinquency case. First, there must be information in the record establishing a connection between the search condition and the probationer's criminal conduct or personal history–an actual connection apparent in the evidence, not one that is just abstract or hypothetical. [Citation.] But no nexus between the search condition and the minor's underlying offense is required. '[C]ourts may properly base probation conditions upon information in a probation report that raises concerns about future criminality unrelated to' past criminal conduct. [Citation.] Finally, 'the burden imposed by [the] probation condition' must be proportionate to 'the legitimate interests served by the condition'. [Citation.] Thus, ' " [a] condition of probation that enables a probation officer to supervise his or her charges effectively is . . . 'reasonably related to future criminality,' " ' only if its infringement on the probation's liberty is  not 'substantially

6

disproportionate to the ends of reformation and rehabilitation.' " (*Id.* at p. 166, italics omitted.)

The appellate court went on to conclude the juvenile court acted within its discretion in imposing an electronic search condition. In *Alonzo,* the juvenile committed felony grand theft and misdemeanor burglary. While he spent "a significant amount of his time using electronic devices", it was not tied to his criminality. (*Alonzo M., supra,* 40 Cal.App.5th at pp. 160, 166-167.) However, he and his mother "attributed [his] delinquent behavior to the people he socialized with in Oakland." (*Id.* at p. 166.) Given the minor's "negative peer influences," the "juvenile court properly concluded that an electronic search term in some form could be imposed as a condition of Alonzo's probation. (*Id.* at p. 168.)

However, "[a]pplying the reasoning of *Ricardo P.,*" the court also concluded the search condition needed to be narrowed. (*Alonzo M., supra,* 40 Cal.App.5th at p. 168.) The condition stated: " '[Y]ou must submit your cell phone or any other electronic device under your control to a search of any medium of communication reasonably likely to reveal *whether you're complying with the terms of your probation* with or without a search warrant at any time of day or night. Such medium of communication includes text messages, voicemail messages, photographs, e-mail accounts and other social media accounts and applications. You shall provide access codes to probation or any other peace officer upon request to effectuate the search.' " (*Id.* at p. 163, italics added.) The italicized language, said the court, exceeded the permissible bounds of *Ricardo P.* The court therefore remanded for refinement of the language to "allow[] search of any medium of communication reasonably likely to reveal whether Alonzo is associating with prohibited persons." (*Id.* at p. 168.)

7

Similarly, here the record revealed that A.W. is subject to negative peer influence.  Indeed, he admitted being well acquainted with gang members and stated he was not bothered by the gang's activities, including "Shooting [and] Killing" because "[k]illing is part of life."  A.W.'s mother also expressed concern that he was easily influenced.  Thus, the juvenile court acted well within its discretion in determining an electronic search condition was "necessary to properly supervise the minor and ensure he was adhering to the terms of his Probation, particularly disassociating from his negative peers." (See *Alonzo, supra,* 40 Cal.App.5th at p. 168.)  However, as in *Alonzo M.,* the language of the search condition needs further refinement to specify that the purpose of any search is to enforce the gang terms and ensure A.W. is not in contact with gang members or potential gang members.  (See *Ibid.*)

## DISPOSITION

The electronic devices search clause is stricken.  We remand the case to the juvenile court to allow the court to determine (1) whether appellant is still on probation and (2) determine whether to impose a more narrowly tailored electronics search condition consistent with this opinion.

_____

Banke, J.

We concur:

_____

Margulies, Acting P.J.

_____

Sanchez, J.

A157072, In re A.W.

9