Filed 3/12/21  P. v. N.F. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br>v.<br>N.F.,<br><br>     Defendant and Appellant. | A157676<br><br>(Contra Costa County<br>Super. Ct. No. J19-00495) |

At issue in this appeal is whether the electronic search condition imposed on N.F. as a condition of probation is unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and unconstitutionally overbroad as applied. The Attorney General agrees with N.F. that the condition as written is both unreasonable and overbroad.  We will strike the condition and remand for the juvenile court to consider whether to impose a narrower electronic search condition that is consistent with *Lent* and our Supreme Court's decision in *In re Ricardo P.* (2019) 7 Cal.5th 1113, which was filed after the juvenile court's order in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

The Sacramento County District Attorney filed a juvenile wardship petition against N.F. alleging he committed first degree burglary (Pen. Code,

§ 459[1]; count 1) on or about May 22, 2018, a serious felony within the meaning of section 1192.7, subdivision (c); and first degree robbery on or about July 13, 2018 (§ 212.5; count 2) in concert with others within an inhabited structure (§ 213, subd. (a)(1)(A)), and that N.F. had been a principal in a felony in which one or more principals had been armed with a firearm (§ 12022, subd. (a)).  As we shall explain, count 1 was eventually dismissed.

The July 13, 2018 Incident

We describe the facts relating to the allegations of count 2, which was subsequently amended and to which N.F. pleaded guilty.  Our description is based on the probation department's report, which itself drew on police reports.

On July 13, 2018, at about 6:30 a.m., officers responded to a residence in Sacramento after a report of a home invasion robbery.  Two adults (each 18 years old) and two young children (ages 7 and 2) were in the home.  One of the adults (Daniel) was the older brother of the two young children.  Daniel's parents had already left for work.

Daniel gave a statement to police.  He was asleep in his bed and awakened when three suspects with hooded sweatshirts and masks started punching him in the face.  They had broken into the house and were going through his drawers.  They "kept asking him where the money was"; he said he did not know.  Daniel was grabbed by the suspects before he could get away.  One of the suspects was armed with a black handgun, which he pointed at Daniel's head and "demanded he take them to the money."  Daniel took them upstairs to his parents' bedroom and to a locked fireproof box in the closet, which the three suspects grabbed, along with a sewing kit.  Daniel

---

[1] All further statutory references are to the Penal Code.

2

said the box contained about $20,000 in cash and $50,000 in jewelry, including diamonds and gold.

The other 18-year-old in the house was a family friend who had been asleep in a bedroom when she heard Daniel screaming downstairs. She saw his face bloodied, with one suspect holding him and another pointing a gun at him. She went to the parents' bedroom where the young children were. The probation officer's report continues:

"She then saw those two suspects and a third suspect, walk Daniel upstairs and enter the master bedroom, with the suspect with the gun telling Daniel, 'I'll shoot, I'll shoot.' While the suspect with the gun stood nearby, the other two suspects walked Daniel to the closet. She said the suspect with the gun told her he wasn't going to hurt her, and when she asked if she could take the children to her room, he let her. She stated she did not hear any talking between Daniel and the suspects. She waited until Daniel came into her room after the suspects had left, and she called the police. She mentioned Daniel had sold his Camaro car the day before for $25,000 cash, and he had taken a photo of himself holding the money to his head like a phone. Then he had posted the photo on Instagram, while bragging about all the money he had made."

The seven-year-old victim told law enforcement that he heard his brother call the suspects by name.

Home security videos appeared to show the suspects arriving in a red Dodge van or SUV just before the incident; a witness and other security videos showed the three suspects running back to the vehicle after the incident.

A few days later, Daniel's mother told law enforcement that one of the suspects was named "Maurice." Daniel was reinterviewed by law

enforcement (Detective Elliott) on August 1.  The probation reports states:

"He said he wanted to clarify the suspects had been going through his drawers, before they woke him up and started hitting him.  He acknowledged having posted a photo before the incident on Instagram and Snapchat.  He mentioned he was on 'ankle' with a pending case of his own, and he did not really want to talk about the incident.  He repeated several times he did not want to press charges, and he stated he did not want to 'give up any other names,' as it was 'not worth the risk.'

"He then said he did know a Maurice, who had just been arrested with an old friend of his, who was very familiar with his parent's house.  He the[n] stated he knew it was Maurice who had been in the house and he knew Detective Elliott knew the other suspects, who he referred to as brothers named M[.] and A[.][2]  He also mentioned hearing 'bits and pieces,' including that the driver of the suspects had been suspect [M.'s] sister.  He then stated Maurice was a friend of his on social media, and he was certain would have seen the photo he posted, and who knew where he lived and knew his parents went to work early.  Daniel then identified the friend who had been arrested with Maurice, as Matthew Bamford, born November of 1998.  He then repeated that Matthew knew the layout of the house and knew his parents left for work early."

In late September 2018, Maurice Scott was arrested for "Vehicular Evasion," and fled to a house on Button Court.  While Detective Elliot was at that address, he saw a red Dodge Journey that appeared to match the vehicle in the security videos; it was being driven by N.F.'s older half-sister, Anita Suafai.

---

[2] M. and A. are minors.  "M." is N.F.'s nickname.

Meanwhile, Detective Elliott had connected N.F. to the Button Court home and believed N.F. might be the "M[.]" connected to the incident. Daniel was shown a photo line-up with N.F.'s picture in it, and positively identified N.F. as having been involved in the offense.

<u>N.F.'s Admission and Factual Basis for Plea</u>

On April 30, 2019, N.F. admitted to felony assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)) as a lesser included or reasonably related offense to count 2, and count 1 was dismissed.

As part of the plea agreement, N.F. admitted as the factual basis for his plea that he "did willfully and unlawfully commit an assault upon Daniel [ ] by means of force likely to produce great bodily injury," and that "[p]rior to July 13th, 2018, accomplices Matthew Bamford and Maurice Scott[3] had messaged back and forth setting up a robbery, as evidenced in cell phone extractions. On July 13th, 2018, the minor assisted Scott by entering the victim's house, along with Scott and another subject. Outside Anita Suafai waited in a red Dodge Journey, as captured on the surveillance video. Throughout the event, Scott had been armed with a firearm. The subjects confronted the victim in his bedroom and attacked him. Scott forced the victim at gunpoint to take them to where valuables were hidden. They were led to another bedroom where a small safe was hidden. Inside that bedroom were two other household members. The minor, Scott, and the third subject took the safe and fled to the red Dodge Journey, which is also captured on surveillance."

The case was transferred to Contra Costa County, N.F.'s legal residence, for disposition. There the juvenile court declared N.F. a ward of

---

[3] At the time of the crime, N.F. was 15 years old; Maurice Scott was 20; Matthew Bamford was about 19.

the court and committed him to the County's Youthful Offender Treatment Program for a maximum period of four years or until age 21, whichever came first, and imposed various terms of probation. One of those terms was an electronic search condition. The term required N.F. to "[s]ubmit [his] cell phone and any other electronic device under [his] control to search of any medium of communication reasonably likely to reveal whether [he] [is] complying with the terms of his probation." The probation term "includes text messages, voicemail messages, call logs, photographs, email accounts and other social media accounts and applications such as Snapchat, Instagram, Facebook, and Kik," and required N.F. to provide access codes necessary to conduct the search to the probation officer or any other peace officer upon request.

Addressing N.F., the court offered two bases for the search condition: "This is a case in which you worked in concert with other offenders, and it is—you'd have to have your head buried in the sand to [not] realize that young people in this day and age communicate with each other by using electronic devices. It's likely that events like the ones that were involved in this case involved that kind of communication. [¶] Furthermore, you will be ordered to not have any affiliation with people who are not approved of by your parents or probation, including those who are involved in this crime, and not have any contact with the victims. And in order to make sure that you're obeying those terms of probation, we must check—be able to check your cell phone and other electronic devices. It is—I cannot imagine a case in which it's more appropriate to be able to check on that sort of thing, because if you don't check and you become involved with folks like that again, it's all over."

N.F.'s counsel objected to the electronics search condition at the time it was imposed.[4]

N.F. had been interviewed by the probation officer in advance of the disposition. He was asked about the Instagram photos showing Daniel "holding a large chunk of cash." N.F. "initially said he did not know about it, but as he was asked more specifics about it, he acknowledged having seen the photo before the robbery. He also said that he knew the two co-responsibles who were with him in the house . . . had planned to go into the victim's house to rob the victim of the large amount of money. He did not seem to want to deny or admit to being part of that planning."

This appeal followed.

## DISCUSSION

N.F. argues on appeal that the electronics search condition is unreasonable under *Lent* and unconstitutionally overbroad as applied to him, and that it must be stricken. The Attorney General does not disagree. The parties' only dispute is whether, as the Attorney General urges, the matter should be remanded to the juvenile court to consider whether a more narrowly drawn condition may be imposed. We shall strike the condition and remand.

A. Applicable Law

We presume the parties are familiar with the *Lent* factors and the legal standards that apply to probation conditions in juvenile cases. (See *In re Amber K.* (2020) 45 Cal.App.5th 559, 564-565.) Under *Lent* a condition of probation is not invalid unless it " '(1) has no relationship to the crime of

---

[4] Therefore we need not address N.F.'s alternative argument based on ineffective assistance of counsel for failure to adequately object to the search condition.

7

which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent*, *supra*, 15 Cal.3d at p. 486.) "Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Ibid*.)

We review a condition of probation for abuse of discretion. (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1118.)

B. Analysis

Our focus here is on the second and third *Lent* factors. The Attorney General concedes and we agree that the search condition does not appear to relate to the crime of assault to which N.F. pleaded guilty (the first *Lent* factor). N.F. admitted to having seen the Snapchat photo of the victim, Daniel, holding the money, and to knowing of the plan to rob the victim. However, the probation office report indicates N.F. was equivocal as to whether he was part of the planning. In connection with planning for the robbery, N.F.'s co-responsibles had messaged each other, as reflected by cell phone extraction records, but there were no facts developed in this record that N.F. had himself used electronic devices to plan or carry out the assault. In imposing the electronics search condition, the trial court generalized that since most young people use electronic devices, and N.F. worked in concert with others who used electronic devices, he must have, too, but the record does not support that assumption.

As to the third factor, the Attorney General concedes, and again we agree, that the electronics search condition is not reasonably related to preventing N.F.'s future criminality (the third *Lent* factor). The juvenile court's stated reason for imposing the electronics search condition was to

ensure that N.F. was obeying the terms of his probation, specifically, that he stay away from certain individuals (including his co-responsibles).

Here we are guided by our Supreme Court's more recent decision in *Ricardo P.* in assessing the requirement of reasonable relatedness to future criminality. In *Ricardo P.*, defendant admitted that he committed two felony burglaries. The juvenile's probation conditions included drug testing, prohibitions on using illegal drugs and alcohol, and prohibitions on associating with people who Ricardo knew used or possessed illegal drugs. On top of that, the juvenile court imposed a broad electronics search condition subjecting his devices to warrantless search any time of the day or night. The juvenile court's stated reason for the electronics search condition was to monitor whether Ricardo was communicating about drugs or with people associated with drugs, although the language of the search condition was not so tailored. Our Supreme Court held that in the absence of any evidence that electronic devices were connected to the commission of the burglaries or that the juvenile used them in connection with drug use or other criminal activity, the electronics search condition was invalid because the burden on the juvenile's privacy was "substantially disproportionate to the condition's goal of monitoring and deterring drug use," (*Ricardo P.*, *supra*, 7 Cal.5th at pp. 1119-1120) and therefore not reasonably related to future criminality. (*Id*. at p. 1122.) Our Supreme Court emphasized that it was not categorically invalidating electronic search conditions, but affirmed the Court of Appeal's judgment striking the condition and remanding to the juvenile court for further proceedings. (*Id*. at pp. 1128-1129.) In so doing, the Supreme Court in *Ricardo P.* did not reach the issue whether the record might support a narrower search condition, or how it might be phrased. (See *id*. at p. 1124.)

9

The Attorney General concedes, and we agree, that the juvenile court's justification for the broad electronics search condition here—to enforce the stay away order—cannot survive scrutiny under *Ricardo P.*, since "the burden on the probationer would be disproportionate to the legitimate interest in effective supervision." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1125.)

In light of our conclusion that the search condition as stated cannot stand, we need not reach N.F.'s argument on appeal that the search condition is unconstitutionally overbroad.

We thus conclude that the electronics search condition imposed by the juvenile court is invalid under *Lent* and *Ricardo P.* N.F. argues that this must end the inquiry, and the case may not be remanded. We disagree. It is possible that a narrower electronic search condition may be appropriately imposed, based on facts that are not reflected in this record. (See *People v. Cota* (2020) 45 Cal.App.5th 786, 791, review denied May 13, 2020, S261543.) The juvenile court did not have the benefit of *Ricardo P.* at the time the probation terms were initially imposed. We will strike the electronics search condition without prejudice to the People, who may attempt to demonstrate on remand with additional facts that a more narrowly tailored electronics search condition would be proportionate to the burden on N.F.'s privacy. (See *ibid.*)

## DISPOSITION

The disposition order is affirmed except the electronics search condition, which is stricken. We remand to the juvenile court to consider whether to impose a revised electronics search condition that is consistent with *Lent* and *Ricardo P.* and with this opinion.

_____
Miller, J.


WE CONCUR:


_____
Richman, Acting P.J.


_____
Stewart, J.


A157676, *People v. N.F.*