Filed 8/14/23  P. v. Quickle CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B324372 |
| Plaintiff and Respondent, | (Super. Ct. No. 21F-04967) (San Luis Obispo County) |
| v. | |
| JASON ALVIN QUICKLE, | |
| Defendant and Appellant. | |

Jason Alvin Quickle appeals an order imposing probation conditions after he admitted a probation violation following his conviction of assault with force likely to produce great bodily injury.  (Pen. Code, § 245, subd. (a)(4).)[1]  We conclude, among other things, that 1) Quickle knowingly and intelligently waived his right to a probation violation hearing; and 2) the trial court properly imposed a probation term that he not use, possess, or

_____

[1] All statutory references are to the Penal Code unless stated otherwise.

cultivate marijuana or frequent places where the sale of marijuana is the principal business. We affirm.

FACTS

On August 9, 2021, Noel Burleson and Gabriela Salibo were walking their dog. They saw Quickle chase a bike rider away. Quickle then turned around, yelled at Burleson and Salibo, "flipped open a pocketknife," and yelled, " 'I'm going to carve you up.' " As Burleson and Salibo ran away, Quickle repeated that he would "carve them up." As Burleson "fled the area," he saw Quickle "throw rocks at his car." The police arrested Quickle.

In 2021, Quickle pled no contest to assault with force likely to produce great bodily injury. (§ 245, subd. (a)(4).) He was placed on probation. His probation terms prohibited him from using illegal drugs and being in possession of drugs or drug paraphernalia. He was required to submit to urinalysis drug testing. Quickle was allowed, however, to use marijuana as provided in Health and Safety Code section 11362.5 (Compassionate Use Act of 1996) during probation.

In August 2022, Quickle's drug testing results showed he was positive for "methamphetamine and alcohol." He was "verbally reprimanded for drug use."

In September 2022, Quickle admitted to his probation officer that he had violated his probation terms because he had used illegal drugs including methamphetamine and fentanyl. He was also in possession of drugs and drug paraphernalia. On September 7, 2022, the probation officer went to Quickle's trailer. In the trailer was a "plastic Pepsi bottle filled with marijuana along with 4 bottles of butane gas and a large plastic bag of marihuana." The Pepsi bottle had a hole on the top cap of the

bottle and a small hole at the bottom of the bottle. The probation officer was "concerned" that Quickle "was involved in the *manufacturing of concentrated cannabis* ('honey oil')." (Italics added.) Quickle was arrested.

In the probation report, the probation officer said Quickle had been allowed to use marijuana during his probation period. But he had been using the marijuana to *manufacture* concentrated marijuana known as honey oil. The officer recommended a modified probation term that Quickle is "*[n]ot to use, possess or cultivate marijuana or frequent places where the sale of the same is principal business.*"

At his probation violation hearing, the trial court asked Quickle, "Do you wish to admit you violated probation and give up your right to a hearing?" Quickle responded, "Yes, ma'am." The court asked Quickle's counsel whether he would "join in [Quickle's] waivers." Counsel responded, "Yes, Your Honor." The court found Quickle had "freely, voluntarily, knowingly, and intelligently waived" his right to a hearing on the probation violations.

The trial court reinstated probation for Quickle on "all the same terms and conditions" of his previous probation, except 1) Quickle was ordered to serve 90 days in county jail; and 2) in an added term No. 16, he was "ordered not to use, possess, or cultivate marijuana or frequent places where the sale of marijuana is the principal business."

Quickle responded, "I have my medical marijuana license, ma'am." The trial court said, "Term [No.] 16 is now being imposed." The court then asked, "Anything further on his case, counsel?" Counsel responded, "No, Your Honor." Quickle made no response.

3

*A Knowing, Intelligent Waiver of the Right to a Hearing*

Quickle knowingly and intelligently waived his right to a probation violation hearing. "Knowing and intelligent waivers are generally required when a criminal defendant gives up 'any significant right.'" (*People v. Trujillo* (2015) 60 Cal.4th 850, 859.) The "active participation of the trial judge is encouraged to ensure that the record adequately reflects a valid waiver of an important constitutional right." (*Ibid.*)

Here Quickle appeared with his counsel and waived his right to a probation violation hearing and admitted the violations. Before doing so, the trial court advised him that by admitting the probation violations, he would be giving up the right 1) to a hearing where the People "have to prove you violated probation," 2) to be represented by an attorney at all stages of that proceeding, 3) to remain silent, 4) to question witnesses, 5) to subpoena witnesses, 6) to present a defense, and 7) to call witnesses. The court advised him that it would impose a 90-day jail sentence for the probation violations.

When Quickle's counsel suggested the alternative to "set" the case "for a hearing," Quickle responded "No." The trial court found he "freely, voluntarily, knowingly, and intelligently waived [his] right to a hearing."

Quickle contends he was not advised that a new probation condition, term No. 16, would preclude him from possessing marijuana. But that new condition was the recommendation in the probation report. Quickle notes that his counsel had the opportunity to review the probation report because he knew the report's recommended sentence. Before accepting his admissions, the trial court told his counsel that it was going to follow the recommendations in the probation report. Counsel then asked

4

Quickle, "Do you wish to admit the violation?" Quickle responded, "Yes sir."

After accepting Quickle's admission of the probation violations, the trial court said, "[Y]ou're ordered not to use, possess, or cultivate marijuana or frequent places where the sale of marijuana is the principal business." Quickle told the court he had his "marijuana license." But the court repeated that it was imposing that condition.

If Quickle had an objection or wanted to vacate his admissions, he had the opportunity to raise those objections or ask for a hearing at that time. The trial court asked, "Anything further on his case, counsel?" Counsel said, "No, Your Honor." Quickle made no objection. Quickle claims he would have demanded a hearing had he known about the new condition. But he was advised about the new condition, and he did not demand a hearing during a period where such a request could have been raised in the trial court. Quickle did not file a motion to vacate his admission of the probation violations in the trial court. Moreover, this record does not support his claim that he wanted a probation violation hearing. When that option came up during the hearing, he said "No."

*The New Probation Condition – Term No. 16*

Quickle contends the trial court abused its discretion by adding probation term No. 16 because the condition prohibiting the use of marijuana has "no relationship" to assault with force likely to produce great bodily injury.

But " 'conditions of probation aimed at rehabilitating the offender need not be so strictly tied to the offender's precise crime' [citation] so long as they are 'reasonably directed at curbing [the defendant's] future criminality.' " (*In re Ricardo P.*

5

(2019) 7 Cal.5th 1113, 1122.) "[C]ourts may properly base probation conditions upon information in a probation report that raises concerns about future criminality unrelated to a prior offense." (*Ibid*.)

Quickle claims that "using medical marijuana for chronic pain is not reasonably related to future criminality." But " 'seriously ill Californians have the right to obtain and use marijuana *for medical purposes* where that *medical use* is deemed appropriate and *has been recommended by a physician*.' " (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 767, italics added.) The law that approves such medical use of marijuana, however, does not " '*condone the diversion* of marijuana' " for other purposes. (*Id*. at p. 768, italics added.)

Here the probation report shows Quickle was not using marijuana for a medical purpose. He was involved in using it for the "manufacturing of concentrated cannabis ('honey oil')." Manufacturing honey oil is a criminal offense. (*People v. Bergen* (2008) 166 Cal.App.4th 161, 164.) Quickle's criminal history is significant, and it includes drug crimes and violent crimes. In 1994, he was convicted of smuggling marijuana. In 1995, he was convicted of assault (§ 245, subd. (a)(2)), a felony, and he served six years in prison. In 2005, he was convicted of battery. In 2015, he was convicted of possession of a controlled substance and a threat "to perform act of violence." In 2019, he was convicted of resisting a public officer. (§ 148, subd. (a)(1).)

When Quickle's manufacturing of honey oil is combined with 1) his probation violations for using other illegal drugs and possession of drug paraphernalia and 2) his criminal history, a trial court could reasonably find term No. 16 was "directed at

curbing [Quickle's] future criminality." (*In re Ricardo P., supra*, 7 Cal.5th at p. 1122.)

DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

CODY, J.

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Patricia S. Snyder, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.