Filed 3/25/24  In re M.T. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re M.T., a Person Coming Under the Juvenile Court Law. | B327856 |
| | (Los Angeles County Super. Ct. No. NJ30388) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| M.T., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John C. Lawson II, Judge.  Affirmed.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Appellant M.T. was charged with second degree robbery as a juvenile under Welfare and Institutions Code section 602.[1] The juvenile court found the allegation true, deemed M.T. a ward of the court, and placed him on probation with an order that included a curfew of 8:00 p.m. unless M.T.'s mother "[k]nows where you are and who you are with." On appeal, M.T. asserts his counsel was ineffective for failing to object to the curfew condition. We find no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The People filed a petition under section 602 alleging that M.T., age 17 at the time of the offense, committed attempted second degree robbery, a felony, by attempting to take personal property from A.G. by means of force or fear. (Pen. Code, §§ 211, 664.) The case proceeded to a trial.

A.G., age 15, testified that on March 31, 2022 he was at a park near his high school with his friends A.R. and M. Three people, including M.T., began to approach A.G. and his friends; A.G. handed his phone to M. One person (not M.T.) pulled out a knife, and with the blade closed, held the knife to A.G.'s abdomen. He told A.G. to hand over any valuables, and said if A.G. moved, he would open the knife's blade and cut him. M.T. and the third person approached A.G. from behind; they also told A.G. to give them any valuables. The three people felt A.G.'s pockets. M.T. and the third person moved to A.G.'s backpack, which was on the ground nearby, and searched the backpack, taking out A.G.'s books and pencils. The three people took a blue

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

knit cap off A.G.'s head; they did not take anything else. A.G. recognized the three individuals from school.

A.G. and his friends approached police officers nearby and told them about the incident. As they were talking to the officers, A.G. saw M.T. and identified him as one of the individuals involved in the incident. The officers detained M.T.

M.T. and his brother, F., testified that on the day of the incident they were together at the skate park within the park where the incident occurred. M.T. and F. testified that they observed two people wearing ski masks wield a knife and pull someone's backpack off. They testified that M.T. got involved in the incident only to push the people away from each other. On cross-examination, F. admitted that his testimony differed from what he told investigators, and M.T. admitted that he never told police this version of the events.

The trial court found the allegation to be true beyond a reasonable doubt and sustained the petition. The court deemed M.T. a ward of the court under section 602 and placed him on probation with an order that included various conditions, such as requiring M.T. to continue working toward getting his high school diploma. M.T.'s mother was present, and the court asked her, "[D]o you have a curfew in your house?" The court clarified, "A time where you tell [M.T.] to be in the house?" M.T.'s mother answered yes, "No later than 8:00." The court then imposed a curfew from "8:00 p.m. to 6:00 a.m. unless your mother says otherwise and she knows – 8:00 p.m. to 6:00 a.m. unless your mother knows otherwise. Knows where you are and who you are with."

In a question that was not necessarily about the curfew, M.T. told the court that he had a job and asked the court about

3

working while finishing school. The court told M.T. he could work around a school schedule: "[I]f there are morning classes, then you have an afternoon shift. If you got [ ] afternoon classes, then you work the morning or you work at night. Or if you got night classes for high school, you go to the night classes." The court added, "[Y]ou make your schedule the way you want to make it that's the best for you," as long as it involved earning credits toward a diploma.

The curfew is not reflected in the trial court's minute order. However, the minute order instructs that M.T. must obey the rules of his parents, caregivers, and school officials. M.T.'s counsel did not object to any portion of the court's ruling.

M.T. timely appealed.

## DISCUSSION

M.T.'s sole argument on appeal is that his counsel was ineffective for failing to object to the 8:00 p.m. curfew. He asserts that an objection would have been granted, because the curfew is unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*).[2] We are not persuaded.

""""To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. [Citation.] 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'""" (*People v. Rices* (2017) 4 Cal.5th 49, 80, citing *Strickland v.*

---

[2] *Lent* was superseded by statute on other grounds as stated in *People v. Moran* (2016) 1 Cal.5th 398, 403, fn. 6. (*Moran*)

*Washington* (1984) 466 U.S. 668, 694.) "Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" (*People v. Lucas* (1995) 12 Cal.4th 415, 436-437.)

A "juvenile court has wide discretion to select appropriate conditions" of probation (*In re Sheena K.* (2007) 40 Cal.4th 875, 889), and therefore the court "may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b).) A condition of probation will not be held invalid unless it "'(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.'" (*Lent, supra*, 15 Cal.3d at p. 486; see also *People v. Moran, supra*, 1 Cal.5th at p. 403 (*Moran*).) "'This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality.'" (*Moran, supra*, 1 Cal.5th at p. 403.)

Here, we do not find that counsel's failure to object fell below an objective standard of reasonableness under prevailing professional norms. M.T. lived with his mother. In a portion of the order not challenged on appeal, the juvenile court ordered M.T. to comply with his mother's rules. In court, M.T.'s mother

said she held M.T. to an 8:00 p.m. curfew, so the court imposed that curfew "unless" M.T.'s mother knew where M.T. was and who he was with. The court made clear that the curfew should not interfere with M.T.'s schooling or work schedule.

A curfew condition is statutorily required in a juvenile case: "If a minor is found to be a person described in Section 601 or 602 and the court does not remove the minor from the physical custody of the parent or guardian, the court as a condition of probation . . . shall: . . . (c) Require the minor to be at his or her legal residence between the hours of 10:00 p.m. and 6:00 a.m. unless the minor is accompanied by his or her parent or parents, legal guardian or other adult person having the legal care or custody of the minor." (§ 729.2; see also Cal. Rules of Court, rule 5.790(b)(3).) Section 729.2 does not "limit the probation conditions the juvenile court may fashion to serve the court's purpose of rehabilitation and preservation of family ties. Section[ ] 729.2 thus serve[s] as a floor, not a ceiling, for juvenile probation conditions." (*In re Walter P.* (2009) 170 Cal.App.4th 95, 99.)

Here, M.T.'s counsel reasonably could have seen the trial court's imposition of an earlier curfew—which was imposed only if M.T.'s mother did not know where M.T. was—as supportive of M.T.'s rehabilitation. The court emphasized that M.T. should finish earning his high school diploma, he could continue working while earning high school credits, and he could "make your schedule the way you want to make it that's the best for you."[3] M.T.'s counsel may have chosen not to object based on a determination that M.T. would benefit from additional

---

[3] M.T.'s contention that the juvenile court's 8:00 curfew limited him from attending school is contradicted by the record.

6

supervision from his mother, or that following his mother's house rules was reasonably related to supporting M.T.'s education and rehabilitation. "[J]uveniles are deemed to be more in need of guidance and supervision than adults." (*In re Antonio R.* (2000) 78 Cal.App.4th 937, 941.)  In addition, "'[t]here is a "well known correlation between education and the crime rate." [Citations.] Performance in school is reasonably related to future criminality, both by deterring current delinquency, and by enhancing the ability to maintain prospective employment or to continue in advanced education upon graduation.  A court may reasonably conclude a juvenile, without an adequate education, is more likely to resort to criminal activities.'" (*In re N.R.* (2017) 15 Cal.App.5th 590, 597.)

This case is not similar to *People v. Nassetta* (2016) 3 Cal.App.5th 699, upon which M.T. relies.  There, "Nassetta was 28 years old when he was placed on probation, and he was not ordered to live with his parents or continue his education." (*Id.* at p. 705.)  *Nassetta* therefore is distinguishable.  In addition, "'[a] condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court.'" (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118.)

M.T. also has not demonstrated a reasonable probability that, but for counsel's failure to object, the result would have been more favorable to him.  M.T. did not challenge the juvenile court's order that he must obey the rules of his parents.  M.T.'s mother told the court she imposes a curfew of 8:00 p.m., and M.T. was required to comply with his mother's rules.  Thus, M.T. has not demonstrated a probability of a different result had counsel objected.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, ACTING P. J.

We concur:

MORI, J.

ZUKIN, J.

8